**UNITED STATES ex rel. FRIEDMAN v. TOD, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. February 4, 1924.)

No. 195.

1. Aliens ⬤⟶46—Provision of Immigration Act, requiring that words in "ordinary" use be furnished in literacy test, means words in common use.

Under Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), requiring immigration inspectors, in giving aliens literacy tests, to furnish them with slips "containing not less than 30 nor more than 40 words in ordinary use," the words should be those met with at ordinary times and places; the word "ordinary" meaning common, usual, often recurring, or common in occurrence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary (Adj.).]

2. Aliens ⬤⟶46—Biblical words used by immigration inspector in literacy test held not "ordinary," as required by statute.

Immigration inspector's use of slip with the words in Yiddish equivalent to "Blessed is the man that walketh not in the counsel of the ungodly, nor standeth in the way of sinners, nor sitteth in the seat of the scornful," in giving a literacy test under Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), *held* not a compliance with provision of such statute requiring the slips to contain "words in ordinary use," since the words "counsel," "walketh," "sitteth," and "scornful" are not words in ordinary use; the word "ordinary" meaning common, usual, often recurring, or common in occurrence.

3. Aliens ⬤⟶54—Finding of fact by executive department conclusive, if supported by evidence and there was no denial of a fair hearing.

Finding of fact by the immigration department is conclusive, and the courts have no power to interfere, unless there was either a denial of a fair hearing or a finding not supported by the evidence.

4. Aliens ⬤⟶54—Immigration inspector's finding as to illiteracy not conclusive, where erroneous rule of law was applied.

Where the immigration department has applied an erroneous rule of law in literacy test, the immigration department's finding as to illiteracy is not conclusive on the court in habeas corpus proceeding.

5. Aliens ⬤⟶54—Deportation of alien without literacy test unauthorized.

An immigrant cannot be deported, because illiterate, without literacy test provided for by Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), and Department of Labor rule No. 4, subds. 1 and 2.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Joseph Friedman, relative of Pesia Weitzman, against Robert E. Tod, as Commissioner of Immigration. Writ sustained, and respondent appeals. Order modified, and case remanded, with directions.

William Hayward, U S. Atty., of New York City (James C. Thomas, of New York City, of counsel), for appellant.

Morris Jablow, of New York City (Isaac Siegel, of New York City), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MANTON, Circuit Judge. The immigrant, 23 years of age, arrived at the port of New York on March 17, 1923. She was a native of Ratno, province of Vohlyn, in the Pinsk region of Poland. She was given the literacy test, as required by section 3 of the Act of February 5, 1917 (39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b]), and her entrance into the country was denied. This writ was sued out, contending that she was not examined in conformity with the statute and the regulations thereunder, and the writ was sustained. The Immigration Act of February 5, 1917, provides:

"Sec. 3. That the following classes of aliens shall be excluded from admission into the United States: * * * All aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish. * * * That for the purpose of ascertaining whether aliens can read the immigrant inspectors shall be furnished with slips of uniform size, prepared under the direction of the Secretary of Labor, each containing not less than thirty nor more than forty words in ordinary use, printed in plainly legible type in some one of the various languages or dialects of immigrants. Each alien may designate the particular language or dialect in which he desires the examination to be made, and shall be required to read the words printed on the slip in such language or dialect. * * * *"

The Department of Labor promulgated rules for the reading test and the method of applying the reading test as follows:

"Rule 4.—Reading Test.

"Subdivision 1. *Who Subject Thereto and by Whom Examined.*—All aliens over 16 years of age who are physically capable of reading, except as specified in the statute and described in subdivision 5 of this rule, shall be required to demonstrate their ability to read matter printed in plainly legible type and in a language or dialect designated by the alien at the time of examination.

"Subdivision 2. *General Method of Applying the Reading Test.*—When applying the reading test, immigration officers shall use the printed and numbered slips supplied by the bureau for that purpose, and a record shall be made upon the manifest or board minutes showing both the class and serial numbers of the slip used in each case and the language or dialect designated by the applicant and actually used in the examination. No two aliens listed upon the same manifest sheet shall be examined at seaports by the use of the same slip. If the examining inspector is unable to speak and understand the language or dialect in which the alien is examined, the services of an interpreter shall be used for interpreting into spoken English as read the printed matter read by the alien, so that the examining inspector may compare such interpretation with the slip of corresponding serial number containing the English translation of the same reading matter."

[1-4] The immigrant was asked, "Do you read any other language than Yiddish?" to which she replied, "No." She was tested by using a printed slip in Yiddish, the English translation of which is, "Blessed is the man that walketh not in the counsel of the ungodly, nor standeth in the way of sinners, nor sitteth in the seat of the scornful." The record reads that she was tested "in class 5–5680 Yiddish and reads a large majority of the words, but is unable to explain the meaning of the test. Language of the test is a symbolic character." The question presented to us is whether the test applied is that intended by the statute, which provides that the immigrant shall be furnished with slips of uniform size, "prepared under the direction of the Secretary of Labor,

each containing not less than thirty or more than forty words in ordinary use, printed in plainly legible type in some one of the various languages or dialects of immigrants." This selection, which was taken from the Old Testament of the Holy Bible, is the first Psalm. The card which the immigrant was furnished was of uniform size and prepared by the Secretary of Labor and contained 28 words in English. It may be that in Yiddish there were 30 words. The card in Yiddish is not in the record, and the record is silent as to this.

But were they words of ordinary use among the Yiddish speaking people? This court held in United States ex rel. Waldman v. Tod, 289 Fed. 761, that under the act in question, in applying the literacy test, there is no authority to require the examination in both Hebrew and Yiddish, and further we held: It is evident that the Congress realized that there is a distinction between Hebrew, a classic language, and Yiddish." And in Engel v. Tod (decided December 31, 1923, C. C. A. Second Circuit) 294 Fed. 820, we pointed out that an alien might be able to read Hebrew and be wholly unable to read Yiddish. But we regard the test applied to this applicant as not that intended by the statute. The statute contemplates the use of words in ordinary use. It does not affirmatively appear, because of the translation, that the Yiddish test was in usual or ordinary language. "Ordinary" should be used in its common acceptation and meaning, as common, usual, often recurring, or common in occurrence. It should be such words as may be met with at ordinary times and places or as often recurring. The Standard Dictionary defines "ordinary" as "that which is usual or common, anything in everyday use. Specifically (1) the common run of humanity; the mass."

We think the test applied to this immigrant contained words which were not in common use. Such words as "counsel" and "walketh," "sitteth," and "scornful" are examples. Therefore we hold that the test contemplated by the statute was not given to this immigrant. We recognize that a finding of fact by the executive department is conclusive. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. And the courts have no power to interfere unless there was either a denial of a fair hearing (Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369), or a finding that was not supported by the evidence. But where there is an application of an erroneous rule of law, the courts have jurisdiction. Gegiow v. Uhl, etc., 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114. To deport the immigrant without the test provided for in the statute, is without authority.

In accordance with our recent pronouncement in Engel v. Tod (decided December 31, 1923), we hold the immigrant should be re-examined, with a view of ascertaining whether she can read understandingly the language she named, to wit, Yiddish. If it is found, after a fair test, that she can read that language understandingly, there is no ground for her exclusion, and she ought to be discharged from custody.

The order appealed from is modified, and the case remanded to the District Court, with directions to proceed in accordance with this opinion.