## UNITED STATES ex rel. DEVENUTO v. CURRAN, Immigration Com'r.

(Circuit Court of Appeals, Second Circuit. April 14, 1924.)

No. 239.

1. Aliens ⊚⇒46—Alien coming to United States with intent to remain acquires American domicile.

An alien of legal age, coming to the United States with a settled intention to remain and make this country his home, acquires an American domicile and loses his former one, though his family remains temporarily in the place of his former domicile.

2. Domicile ⊚⇒1—Defined.

A person's "domicile" is the place where he has his true, fixed, and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.

3. Aliens ⊚⇒46—Right of admission of domiciled alien after temporary absence.

Under Immigration Act, 1917, § 3 (Comp. St. 1918. Comp. St. Ann. Supp. 1919, § 4289¼b), providing that "aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe," rule 16, subd. 3, of Immigration Rules of May 1, 1917, providing that "in such cases convincing proof of a continuous residence of seven years shall be exacted and an absence not exceeding six months shall be deemed a temporary absence within the meaning of the law," is reasonable, and an alien returning after an absence of more than six months cannot claim the benefit of such provision.

4. **Domicile ☞2—"Residence" and "domicile" not convertible terms.**

While the terms "residence" and "domicile" are sometimes used synonymously, they are not convertible terms when accurately used, as one may have several residences at the same time, but can only have one domicile at a time.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domicile; · Residence.]

5. **Aliens ☞46—Literacy test; resident alien cannot claim exemption, if absent more than six months.**

Under the first proviso in Immigration Act 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), exempting from literacy test "all aliens who have been lawfully admitted to the United States and who have resided therein continuously for five years and who return to the United States within six months from the date of their departure therefrom," it is not necessary that the alien should have remained continuously within the United States for the five years in order to bring him within the proviso, but it is necessary that he return from any absence within six months after his departure.

6. **Aliens ☞54—Literacy test; record must show that test conformed to statutory requirements.**

Where an alien is excluded on the ground that he cannot read, the courts are entitled to know exactly what test was used, and that the alien was given the test required by the statute.

7. **Aliens ☞51½, New, vol. 16A Key-No. Series—"Preferences" under quota provisions of statute.**

The provision of Quota Act 1921, § 2 (d), being Comp. St. Ann. Supp. 1923, § 4289½a, that in the enforcement of the quota provision of the act "preference shall be given so far as possible to the wives, parents, brothers * * * (2) of aliens now in the United States who have applied for citizenship," means only that, if the quota from a country has not been filled, those so entitled to preference, if otherwise qualified, shall first be admitted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

Appeal from the District Court of the United States for the Southern District of New York.

Petition for writ of habeas corpus by the United States, on the relation of Nicolo Devenuto, against Henry W. Curran, Commissioner of Immigration. From an order dismissing the writ, relator appeals. Reversed and remanded, with directions.

Gould & Gould, of New York City, for appellant.

William Hayward, U. S. Atty., of New York City (James C. Thomas, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This is an appeal from an order dismissing a writ of habeas corpus, which had been granted to inquire into the

legality of the detention at Ellis Island, by the immigration officials, of one Nicolo Devenuto as an immigrant alien, who had been denied the right to enter the United States and was about to be deported, it is alleged, in violation of his rights.

It appears that Devenuto is a native of Italy, 33 years of age, and married. He is a stone mason by trade. He arrived at the port of New York by the steamship Conte Rosso, on June 14, 1923. He was examined before a board of special inquiry, and the following is an excerpt from his testimony before the board:

"Q. Why did you leave the United States in December [1922]? A. To get my wife.

"Q. How long did you intend to remain away? A. Just as long as I could get her.

"Q. Why didn't you come back within the six months period? A. My wife was pregnant, and I didn't want to leave right away. I am only six days overdue.

"Q. What date did you sail from Italy? A. June 4th.

"Q. Have you any documents to show that you have left the United States on December 7th of last year? A. Yes. (Shows steamship ticket for sailing on the steamship Conte Rosso, December 7, 1922, in the name of an alien; shows income tax receipt dated New York, December 7, 1922; shows Italian passport, issued at Naples, February 23, 1920, renewed for voyage at Italy, December 1, 1922, at New York.)

"Q. Have you any evidence to show that you have served in the Italian army? A. No. (Old passport indicates that on his last arrival from Italy he paid $1 only to the American consul for his visa. Witness also shows a certificate issued by the Minister of War of Italy, indicating that the alien had served in the army of his country.)

"Q. Have you anything to show that you left the United States to join the Italian army? A. No; the Italian consul paid my passport at that time.

"Q. Have you any documents to show that you arrived originally in 1912? A. No.

"Q. Give in detail a statement of how you have been employed since you arrived in this country. A. I am a stone mason, and I have been employed by three contractors in different places. In the winter time, when I couldn't do this, I did some other work, whatever I could find.

"Q. Where were you residing during the time you have been in the United States? A. Baltimore, Tuxedo, Arr. Mills, Central Valley, Arden.

"Q. Do you remember the exact time you have been in each of these several places? A. I am unable to give the exact time I lived at each place. I came to the United States in 1912, and went immediately to Baltimore, remained there two months and then came to Central Valley. Afterwards I was at my residence in Central Valley, and worked in the vicinity of Central Valley.".

A brother of the alien, living in Central Valley, N. Y., was examined and testified as follows:

"Q. How long have you been in the United States? A. Since 1914.

"Q. Are you a citizen? A. No; neither a declarant.

"Q. What is your business? A. Stone mason, earning $10 a day.

"Q. How much money have you in the bank? A. I haven't money saved. I built my own house, which cost me $9,000. I have $3,000 mortgage on it.

"Q. Married? A. Yes; I have four children born in the United States.

"Q. Was your brother ever in the United States before? A. Yes; he has been here five or six years.

"Q. When did he leave the United States? A. Eighth or ninth of December, 1923.

"Q. Why did he leave the United States? A. To get his wife.

"Q. Did he serve in the Italian army? A. Yes; nearly three years.

"Q. Did he go at the call of the Italian consul? A. I believe so.

"Q. How long did he live in the United States before he went into the army? A. Three or four years.

"Q. Do you remember what year he came here? A. I think in 1914.

"Q. Are you sure that he wasn't here in 1912? A. I do not know. I know he was here around that time.

"Q. Is he married? A. Yes."

It also appeared that the alien has another brother residing in Central Valley, N. Y., and that that brother had taken out his first papers, intending to become a citizen of the United States.

The board of special inquiry voted unanimously to exclude him on two grounds: (1) That it appeared that he was unable to read. (2) That his coming was in violation of the quota act—the Act of Congress of May 19, 1921 (Comp. St. Ann. Supp. 1923, §§ 4289½–4289½dd). He was informed of his right of appeal to the Secretary of Labor at Washington, and he thereupon made known his intention to appeal. On appeal the Second Secretary of Labor affirmed the alien's deportation.

[1, 2] A person's domicile is the place where he has his true, fixed, and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Immigration Rules Feb. 1, 1924, rule 12, subd. A, par. 2. No person is without a domicile, and he can have but one at the same time. Assuming that Devenuto was born in Italy of Italian parents, his domicile of origin was in that country. If, after he attained his majority, he came to the United States with the intention of remaining here and making this his permanent home, and was admitted into this country, he thereby acquired an American domicile. For it is a rule of common law that every person sui juris may acquire a domicile of his own choice. In re Newcomb, 192 N. Y. 238, 84 N. E. 950. A domicile of choice is determined upon residence and intent. Sun Printing, etc., Association v. Edwards 194 U. S. 377, 24 Sup. Ct. 696, 48 L. Ed. 1027; Mitchell v. United States, 21 Wall. 350, 22 L. Ed. 584; Ennis v. Smith, 14 How. 400, 14 L. Ed. 472. As soon as he arrived here, if he had the animus manendi, a settled intention to remain and make this country his home, he obtained an American domicile; and as soon as he acquired his new domicile he lost the former one. Desmare v. United States, 93 U. S. 605, 23 L. Ed. 959. If it appears that there has been a concurrence of the factum of removal and the animus to remain, the change of domicile is complete, although the family remains temporarily in the place of the former domicile.

[3] It is asserted on behalf of Devenuto that he arrived in the United States in 1912, with the intention of making this country his home, and that he then acquired an American domicile, which he never relinquished, and that he is therefore within the Act of February 5, 1917, 39 Stat. part 1, c. 29, p. 875 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a, et seq.). Section 3 of that act, in the seventh proviso, reads as follows:

"Provided further, that aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe."

299 F.—14

Under the authority above given, rule 16, subd. 1, of the Immigration Rules of May 1, 1917, reads as follows:

"Subdivision 1. Readmissions of Permanently Domiciled, Temporarily Absent Aliens. Under the seventh proviso to section 3, aliens who have lived in the United States continuously for seven years may be readmitted, after a temporary absence abroad, under such conditions as the department may prescribe. In such cases convincing proof of a continuous residence of seven years shall be exacted, and an absence not exceeding six months shall be deemed a 'temporary absence' within the meaning of the law."

In the Immigration Rules of February 1, 1924, rule 9, which relates to quota limitations, subdivision G, which relates to temporary visit abroad, par. 1, states:

"A 'temporary visit abroad' as used in subdivision (d) of section 2 of said Act of May, 1921, as amended shall be construed to mean an absence in any foreign country without relinquishment of domicile for a period not exceeding six months. An alien remaining abroad more than six months shall be presumed to have abandoned his domicile in the United States, and the burden shall be upon such alien to establish to the satisfaction of the appropriate immigration officer that he has not relinquished such domicile."

And rule 12, subd. A, par. 1, of the Immigration Rules of February 1, 1924, reads as follows:

"Under the seventh proviso to section 3 of the Act of February, 1917, aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor and under such conditions as he may prescribe. In such case satisfactory proof of domicile in the United States for seven consecutive years, and of departure therefrom with the intention of returning thereto will be exacted. * * *"

The proceeding before the board of special inquiry took place in 1923 and was governed by the rule then in force, and as the absence from this country exceeded six months the absence of the alien cannot be regarded as a "temporary absence" within rule 16, subd. 1. We cannot say that this provision of the rule is unreasonable and therefore void. Hee Fuk Yuen v. White (C. C. A.) 273 Fed. 10, 13.

Moreover, it is to be observed that in cases within the seventh proviso convincing proof of domicile in this country for seven consecutive years, and of departure therefrom with the intention of returning thereto, is exacted. The record does not present such proof. If the alien had not been absent for more than six months he would have been afforded every opportunity to show the facts as to his intention in coming to the United States in 1912, and to show his intention to return when he, as he alleges, temporarily left. The Immigration Act of February 5, 1917, in section 3, first proviso, declares:

"That the following classes of persons shall be exempt from the operation of the illiteracy test, to wit: * * * All aliens who have been lawfully admitted to the United States and who have resided therein continuously for five years and who return to the United States within six months from the date of their departure therefrom."

Under the above proviso "domicile" seems to be wholly immaterial. The essential thing is a continuous residence in the United States for the time prescribed.

[4] To exempt from the illiteracy test it appears that one must have "resided" in this country continuously for five years and then returning here after an absence must have returned within six months from the date of his departure. The word "residence," as used in various statutes, has been considered synonymous with "domicile." The courts have so construed statutes relating to the qualification of voters, to homesteads, to taxation, to limitations, to succession, to guardianship, to actions for divorce and separation. Delaware, etc., R. Co. v. Petrowsky, 250 Fed. 554, 162 C. C. A. 570; Boucicault v. Wood, Fed. Cas. No. 1,693; Raymond v. Leishman, 243 Pa. 64, 69, 89 Atl. 791, L. R. A. 1915A, 400, Ann. Cas. 1915C, 780; Abington v. North Bridgewater, 23 Pick. (Mass.) 170; Olivieri v. Atkinson, 168 Mass. 28, 46 N. E. 422; In re Newcomb, 192 N. Y. 238, 84 N. E. 950; People v. Moir, 207 Ill. 180, 69 N. E. 905, 99 Am. St. Rep. 205; Modern Woodmen of America v. Hester, 66 Kan. 129, 71 Pac. 279; Walker v. Stevens, 52 Neb. 653, 72 N. W. 1038; Walker v. Walker, 125 Md. 649, 94 Atl. 346, Ann. Cas. 1916B, 934. But this depends upon the intent of a particular statute as ascertained by construction of its provisions. While the terms "residence" and "domicile" are sometimes used synonymously, they are not convertible terms when accurately used. In re Davis, 217 Fed. 113; Collins v. Ashland (D. C.) 112 Fed. 175; Briggs v. Rochester, 16 Gray (Mass.) 337; Stout v. Leonard, 37 N. J. Law, 492; Pickering v. Winch, 48 Or. 500, 87 Pac. 763, 9 L. R. A. (N. S.) 1159; Salem v. Lyme, 29 Conn. 74; Fairfield v. Easton, 73 Conn. 735, 49 Atl. 200; Cooper v. Commonwealth, 121 Va. 338, 93 S. E. 680. Residence denotes a place of abode, without regard to whether it be temporary or permanent, while a domicile is the place where the law regards the person to be, whether or not he is corporeally found there. And one may have several residences at the same time but he can only have one domicile at a time.

[5] As the act of 1917 uses the term "residence" in certain of its provisions and the term "domicile" in certain of its other provisions, we think that the terms as used are not intended to be construed as interchangeable, but are to be given their accurate meaning; and, conceding that they are used in their accurate sense, the question then arises whether the statute intended by the clause "resided therein continuously for five years" that the alien should have his "residence" in the United States continuously for five years, or that he should actually have been present continuously in this country for that period, for mere physical absence, with the animus revertendi, does not discontinue residence in a place. Regina v. Abington Union, L. R. 5 Q. B. 406, 509.

The meaning of the words "resided continuously," as used in the Naturalization Act of June 29, 1906, c. 3592, § 4, subd. 4, 34 Stat. 596 (Comp. St. § 4352), came before the Circuit Court for the Southern District of New York in Re Schneider, 164 Fed. 335. The statute required the court, before admitting an alien to citizenship, to be satisfied that he had "resided continuously" within the United States five years at least, and within the state or territory where the court is held "one year at least." It was held that the word "continuously," as there used, was not to be understood literally as requiring the applicant to

remain at all times physically within such jurisdiction, but applied to changes of domicile only, and that a sailor by going to sea did not abandon his residence. The court said:

"The word 'continuously,' which is not found in the act of 1802, cannot be construed literally; else a resident of New York would lose his right if he paid a visit to Europe at any time during the first four years of his residence, or spent a day in Jersey City within the year immediately preceding the day of filing his petition. The use of the word may be to prevent any intermediate change of domicile during the five years. If Congress had meant that the alien must remain actually within the territory of the United States uninterruptedly during the five years, it would have used language like that of Act March 3, 1813, c. 42, § 12, 2 Stat. 811: 'For the continued term of five years next preceding his admission as aforesaid have resided within the United States without being at any time during the said five years out of the territory of the United States.'"

A like question came before the District Court in the Western District of Pennsylvania in United States v. Cantini, 199 Fed. 857, and the same conclusion was reached. It was said:

"It was clearly not the purpose of Congress to intend that an alien seeking citizenship should not leave the territorial limits of the United States within a period of five years preceding his application. * * * In the present case, however, the United States does not insist that there shall be no departure from the territory of the United States during the period of five years, but urges that the departure for the length of time in which the defendant was absent from the United States is an unreasonable departure, and therefore, because his departure was unreasonable, the court had no jurisdiction to admit him to citizenship. The court does not believe that the question of the reasonableness or the unreasonableness of an applicant's absence from the United States is a fact which should be determined by it, except in connection with the fact of residence. The fact of residence and the continuity of that residence must be determined by the court, and in determining the fact of residence there must be a consideration of the facts which express the intention of the applicant. If the facts do not clearly show an intention on the part of the applicant to abandon a residence which he has acquired in this country, he must be deemed to be continuing to reside here. * * * *"

And we think that for the reasons stated in the cases cited above that it was not necessary, if Devenuto acquired a residence in the United States on his arrival here in 1912, for him to remain in the country for the next five years continuously in order to bring himself within the first proviso of section 3 of the Act of February 5, 1917. But, conceding that he resided continuously within the United States for five years and that during a part of the time he was absent from the country, it would still be necessary for him to show that he returned within six months from the date of his departure. If he cannot show that he did not return within that period he was subject to the illiteracy test; and this record shows that he did not return until six days after the six months' period had expired. He was therefore subject to the test prescribed by that act.

[6] Section 3 of the act, after specifying the excluded classes, states that there shall also be excluded from admission:

"All aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish. * * * Each alien may designate the particular language or dialect in which he desires the examination to be made, and

shall be required to read the words printed on the slip in such language or dialect."

And section 3 further provides:

"That for the purpose of ascertaining whether aliens can read, the immigrant inspectors shall be furnished with slips of uniform size, prepared under the direction of the Secretary of Labor, each containing not less than thirty nor more than forty words in ordinary use, printed in plainly legible type in some one of the various languages or dialects of immigrants. Each alien may designate the particular language or dialect in which he desires the examination to be made, and shall be required to read the words printed on the slip in such language or dialect."

There is nothing in this record which discloses to the court what test, if any, this alien was subjected to. It does not appear that the words were those in "ordinary use," and that the slip used contained "nor less than thirty nor more than forty words." The immigration officials must understand that, where an alien is excluded on the ground that he cannot read, the courts are entitled to know exactly what test was used. All that we know from this record as to this alien's ability or inability to read is found in the following excerpt from his testimony:

"Q. Were you asked by the steamship agents whether you were able to read? A. No; I told them I could read a little.

"Q. Did any one warn you that you would not be permitted to land, owing to the fact that you are unable to read, and owing to the fact that the quota for Italy had been filled? A. No."

The statement in the record is:

"Excluded; excess quota, unable to read."

This cannot be accepted by the court as proof that the alien was given the kind of test which the act of Congress required to be used in such cases.

This brings us to a consideration of the second ground assigned for this alien's exclusion, which is that his coming was in violation of the Quota Act of May 19, 1921. The Act of May 19, 1921, 42 Stat. pt. 1, c. 8, limited the number of aliens of any nationalty who can be admitted under the immigration laws to the United States, in any fiscal year, to 3 per centum of the number of foreign born persons of such nationality resident in the United States as determined by the United States census of 1910. It defined the word "alien" as including "any person not a native-born or naturalized citizen of the United States." The act therefore applied to Devenuto—he not being "a native-born or a naturalized citizen"—unless he is exempted therefrom by virtue of certain provisions which remain to be considered. It is provided in section 2 (d), in the second proviso, "that aliens returning from a temporary visit abroad" may, if otherwise admissible, be admitted notwithstanding the maximum number of aliens of the same nationality admissible in the same month or fiscal year, as the case may be, shall have entered the United States. This, however, does not help the applicant in this case unless he is "otherwise admissible." If unable to pass the reading test he is not "otherwise admissible."

[7] But section 2 (d) in its third proviso, states:

"That in the enforcement of this act preference shall be given so far as possible to the * * * brothers * * * of aliens now in the United States who have applied for citizenship in the mannor provided by law. * * * "

Because of the last-cited provision it is claimed that he was entitled to preference and that it was not given to him. But what was the "preference" to which he was entitled? As we understand the provision, it means simply that, if the applying alien is otherwise qualified and the maximum number who can be admitted in the particular year or month has not been exceeded, those entitled to the "preference" shall be first admitted, if otherwise qualified, until the quota is filled, to the exclusion of others who may also be qualified, but must be denied admission because in excess of the quota. This record does not disclose that, in reckoning the percentage limits provided in the act, Devenuto was denied any preference which it was possible to give him under the act.

The order is reversed, and the case remanded to the District Court, with directions to proceed in accordance with this opinion.