**NAVIGAZIONE GENERALE ITALIANA v. ELTING, Collector of Customs.**

**No. 483.**

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts and Joseph F. Luley, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

■ This is an action to recover for fines unlawfully imposed upon the plaintiff for bringing in twenty-eight aliens. The complaint contained thirty-three causes of action, the excess being due to double fines in five cases. The cause was tried to a jury of one, and the judge directed a verdict for the defendant on four causes of action; the plaintiff discontinued one. This appeal concerns the cases of the twenty-three remaining aliens, and the five duplications, twenty-eight causes of action in all. The numbers of the causes of action not before us on appeal are 1, 2, 12, 20 and 26. We refer to our general discussion in Cosulich Societa v. Elting (C. C. A.) 66 F.(2d) 534, handed down herewith, for our refusal to recognize the unconditional privilege of the carrier to bring the aliens here for examination, and we proceed to the cases in detail. All the aliens were illiterates except one, No. 27, and were therefore excludable under section 3 of the Immigration Act of 1917 (8 USCA § 136), quite independently of the Quota Act. All came in after July 1, 1924, and the carrier was subject to a fine of $1,000 under section 9 of that act (Immigration Act 1917), as amended by section 26 of the Quota Act of 1924 (8 USCA § 145), unless it could excuse itself. Causes of action Nos. 30, 31, 32, 33, were for fines imposed under section 6 of the Quota Act of 1921 (as added by Act May 11, 1922, § 3 [42 Stat. 540]); No. 29 was for one imposed under section 9 of the Immigration Act of 1917, as amended, for bringing in a defective. We have held that two fines may not be collected for bringing in the same alien. Cosulich Line v. Elting (C. C. A.) 40 F.(2d) 220. As will appear, in cases Nos. 30, 31, 32 and 33, the aliens were not admissible as illiterates, and the double fines must fall. In

case No. 29, the alien was admissible as an illiterate, and if not as a defective, nevertheless the fine must also fall for reasons to appear. We see no reason why the defendant upon this trial should have been required to choose on which fine he would stand.

■ The alien in cause of action No. 27, the only literate, was excluded because he was not returning from a temporary absence abroad under section 4 (b) of the Quota Act of 1924 (8 USCA § 204 (b). The fine was imposed under section 16 of the Act (8 USCA § 216). The alien had been away from the United States for nearly six years, after a residence of eleven years interrupted by an absence of one. His excuse was that he went to see his mother, who became sick and died, while he was there. He did not convincingly explain why he had not come back at once after that; but in any event his case is far weaker than many where we have supported the fine in the other appeals decided herewith.

■ Regarding the illiterates the plaintiff complains that the reading test was unfair. It was always given in Italian, for none of the aliens had any English. All we know about it is the English version of the text used, which consisted of various passages from the King James version of the Bible. How far the diction of the Italian version preserved the archaisms of the English, we cannot say, and the plaintiff must fail, so far as it relies upon that. The language is in substance simple and easy. In U. S. ex rel. Friedman v. Tod, 296 F. 888, we did indeed hold that a passage of Scripture was not a fair test, though used in translation. However, in U. S. ex rel. Azizian v. Curran, 12 F.(2d) 502, we held directly the opposite; and the passage from the Psalms there before us was quite as difficult as in the earlier case. The last holding must prevail, and we hold that all the aliens were illiterates, whose incapacity could have been detected.

■ They had open as a possible excuse either the first, or the seventh, proviso of section 3 of the Act of 1917. To come within the first proviso they had to show a continuous residence of five years with absence of less than six months. In Nos. 7, 14, 15, 22, 23, 25 and 28, they had been away for more than six months, and this defeats the excuse. As to the rest, the question is of their continuous residence for five years before they left, and no one of them was here for so long. Nearly all had indeed been here for more than five years in the aggregate, but with interruptions of more than six months, except in the

case of No. 5. "Residence" in the first proviso does not mean what "domicile" does in the seventh. U. S. ex rel. Devenuto v. Curran, 299 F. 206 (C. C. A. 2). We cannot disregard the apparently deliberate change in phrasing, for in many statutes the two words have a different import. In the Naturalization Act, for example (section 4, subd. 4, Act of June 29, 1906, 34 Stat. 596 [8 USCA § 382]), presumably the applicant must be always domiciled in the United States, and any interruption, however short, will be fatal; but he need not be continuously resident here, in the sense that he must always be present in person. United States v. Mulvey, 232 F. 513 (C. C. A. 2). How long he may be absent and yet have "continuous" residence is left uncertain; but residence is clearly not the same as domicile. So here it may be that an illiterate need not be domiciled in the United States at all to come within the first proviso, but he may lose his continuous residence by an absence, even though incidentally he has acquired a local domicile which the break in his residence would not change. Coming then to the mode of calculating the period, we understand that it must precede the absence allowed, that it dates back from the last departure. The meaning is that those who have already been continuously resident for five years may be away for less than six months without losing their privilege. This seems to follow from the text; and it is independently very unlikely that the purpose was to count the absence as part of the residence. To piece out the required period all the aliens here were obliged to tack upon their last residence, some part of an earlier one. But that earlier residence with one exception was separated from the later by a period of at least four years, and cannot be regarded as continuous with it. The exception is No. 5, in whose case the separation was only by a period of four months. Following the analogy suggested in U. S. ex rel. Amuso v. Curran (D. C.) 299 F. 214, we hold that an interval of less than six months does not of itself break the continuity, and that the residence before and after it may be tacked. This results in affirming the judgment as to No. 5; but in all the other cases the first proviso was not available.

■ The seventh proviso is, as we have said, in terms of domicile, and that must be for seven years. The Secretary has a dispensing power in such cases which he did not use, believing that the domicile was not established. If it was, the aliens were denied the benefit of his discretion, and the fines were not lawful. True, it does not follow that, had he used it, he would have admitted them, but the exclusion was nevertheless unlawful unless they had its benefit. We must consider therefore whether the aliens had unequivocally proved an unrelinquished domicile of seven years at the time of their exclusion. Under this proviso, unlike the first, the period dates back from the entry at which the Secretary is to use his discretion.

■ In cause of action No. 3 the alien, a laborer, had come here in 1909 and stayed until 1912, when he left, served in the army, and came back in 1921, one year after being mustered out. He had a wife and four children in Italy, had no property here and had not declared his intention to become a citizen.

In No. 4 the alien, a laborer, had been here twice for a period of two years, once for one of four. He left in 1914 and served in the army. His wife and three children were in Italy; he had no property here and had not declared his intention.

In No. 6 the alien, a laborer, had been here for five years, but went back as a reservist, presumably called as such. His wife and child were in Italy; he had no property here, and had not declared his intention.

In No. 8 the alien, a scissors grinder, had been here only a year when he went back to serve in the Italian army. He had a wife and two children in Italy and no property here.

In No. 9 the alien, a laborer, was here for two years from 1911 to 1913, served in the army and came back in 1920. He had a wife and five children in Italy and no property here.

In No. 10, the alien, a laborer, asserted that he had been here two years before 1915, when he left to serve in the army, coming back probably as soon as mustered out. He had a wife and six children in Italy and no property here.

In No. 11, the alien, a laborer, had been here for four years, entering as a stowaway. He had a wife in Italy, no property here, and had not declared his intention.

In No. 13, the alien, a salesman, had been here six years after 1909, and left in 1915 to serve in the army, coming back in 1924. He had a wife and four children in Italy, no property here, and had not declared his intention.

In No. 16, the alien, a laborer, had been here six years from 1909, and left in 1915 to serve in the army, coming back in 1920. He

had a wife and child in Italy, no property here, and had not declared his intention.

In No. 18, the alien, a laborer, had been here two years, 1914–1916, and served in the army, coming back in 1920. He had a wife and two children in Italy and no property here.

In No. 19, the alien, a laborer, had been here three years, 1913–1916, and served in the army, coming back in 1920. He had a wife and four children in Italy, no property here and had not declared his intention.

In No. 21, the alien, a laborer, had been here from 1905 to 1908; from 1913 to 1915; and served in the army, coming back in 1920. He had a wife and four children in Italy, no property, and had not declared his intention.

In No. 24, the alien, a laborer, had been here from 1900 to 1907, and from 1910 to 1915, when he served in the army, coming back in 1919. He had a wife and two children in Italy, and no property here, but he declared his intention, in 1923, within a year of his last departure to Italy.

All these aliens were men who came here and worked as casual laborers before the war. They went back, sometimes before they were called, sometimes when they were. They were all married, generally after they returned to Italy. Sometimes they came back at once on being mustered out; sometimes they delayed. Only one had declared his intention to become a citizen, and he very late in the putative seven years' period. None had any property here, or any apparent ties. It seems to us at least doubtful whether any had ever made the United States his home, or if he had, whether when he married he did not abandon it. Most had children in Italy. We cannot say that the authorities were unwarranted in concluding that each had not proved a continuous domicile of seven years. As all the facts were available to the carrier, we conclude that the seventh proviso of section 3 was not a defence.

█ The plaintiff's final position is that a number of the aliens were reservists returning from the army and protected by the Joint Resolution of October 19, 1918 (40 Stat. 1014 [8 USCA § 230]). This argument applies to Nos. 3, 4, 6, 7, 8, 10, 13, 14, 15, 16, 17, 18, 19, 21, 24 and 28. In form that resolution merely allowed an illiterate (among others excluded by the act of 1917), to return after his service in an army of one of our "associates" in the war. All the aliens had been admitted once under the resolution, whose function was thereby ended. Congress did not mean that they should be forever allowed

to come and go; that would have altogether removed their disability; it intended only that, having been called to the flag, their compulsory, or indeed voluntary, departure should not put them into the excluded classes. Perhaps their service might be relevant independently of the resolution. For example, it might rebut the conclusion drawn from absence that they had abandoned their adopted domicile. In that aspect we need not consider it, for, as we have said, the evidence was not certain enough that they had ever gained a new domicile before they entered the service, or had not later abandoned it voluntarily. On the other hand it cannot be argued that the resolution excused the absence which broke the continuity of their residence for five years, eliminating it altogether as a break. The privilege it gave was supplementary to the first proviso of section 3, and was complete in itself; it was not ancillary to its invocation after the alien had once got back. Should he leave later, he must count upon an unbroken five years' residence before he did leave, and he must come back within six months. The general purpose of the proviso was to allow short absences to excludable aliens, the length of whose residence might create substantial ties in this country. Any absence, for whatever reason, would equally prevent these from forming. Therefore, we hold that the entire effect of the resolution was exhausted once the alien entered by virtue of it. Even so, the plaintiff argues that it was entitled to rely upon certain declarations of the officials, because though these could not change the law, they were relevant to the diligence properly required of it.

█ On February 27, 1924, the Standing Committee on Immigration and Navigation Laws (which we suppose to be a committee of the carriers, though that makes no difference) published to the lines an answer made by Sibray, assistant commissioner general of immigration, to a hypothetical question. The case put was of an illiterate who had come in, resided here ten years, left to go on a visit of less than three months, came back and resided here for two years, left again and returned within six months. The answer was that his earlier absence of six months would not break the continuity of his residence. This is the same case as No. 5, and we agree, as we have said; but the ruling did not affect reservists. The other ruling was this. On March 5, 1923, White, second assistant secretary of labor, issued a departmental order, touching reservists. He first said that any alien, a former resident, who served in

the Italian army and came back before March 3, 1923, was within the Joint Resolution of October 19, 1918. This was obviously true. The resolution gave illiterates two years to enter after the end of the war, and the war ended on March 3, 1921 (41 Stat. 1359). He then declared that such an alien should be treated as returning from a temporary visit abroad within section 2 (d) of the Quota Act of 1921 (42 Stat. 5). This had nothing to do with section 3 of the act of 1917. It made no difference whether or not an illiterate was returning from a temporary visit abroad, if he had not been a continuous resident for five years. It would be relevant only in case he was admissible under the act of 1917, but excludable under the Quota Act. Both declarations are therefore immaterial here. It results that the fines were lawfully imposed in all cases except No. 5.

There remain Nos. 30, 31, 32 and 33, imposed under section 6 of the Quota Act of 1921 (as added by Act May 11, 1922, § 3), and No. 29, imposed under section 9 of the act of 1917, as amended. Since we have sustained the fines under section 9 of the act of 1917, as amended, in Nos. 7, 11, 22 and 23, which concerned the same aliens as those in Nos. 30, 31, 32 and 33, the fines in those causes of action must fall. The alien in No. 29 was the same as in No. 5; he was admissible as an illiterate for the reasons we have given. But he had lost the sight of one eye, and had only two-thirds sight in the other; he was excluded because of these physical defects, which were thought likely to affect his ability to earn a living. That this conclusion was reasonably tenable, scarcely needs argument; it was a matter on which the decision of the authorities must be taken as final. There is the further question whether the defect could have been detected; but the local surgeons certified that it could, and we see no reason to hold that such a finding was unreasonable. However, this alien was admissible in spite of his defect, if he had an unrelinquished domicile of seven years, and the Secretary had used his discretion in his favor. The Secretary did not think that he had shown such a domicile, and did not apparently use the discretion. The alien was a casual laborer, forty-three years old, who had been here from 1911 to 1925 with the single interruption of four months; nearly fourteen years in all. It is true that he had a wife in Italy, and that it did not appear when he married her, but it appears to us that reasonable diligence should not have expected that after so long an unbroken residence his domicile would be challenged. The Secretary having

excluded him without exercising his discretion, in the face of his presumptive domicile, we think that the fine was improperly imposed.

The judgment is affirmed as to causes of action Nos. 5, 29, 30, 31, 32 and 33, and reversed as to the others.