## THE CHINESE TAX CASES.

### ON YUEN HAI Co. and others *v*. ROSS and another.

*(Circuit Court, D. Oregon. November 22, 1882.)*

1. ROAD WORK—LIABILITY FOR—HOW ENFORCED.

A statute of Oregon provides that all male persons between certain ages, "residing" in a road district, shall be listed for road labor on or before April 15th, and be liable to perform two days' work on the roads therein, and if any such person shall fail to do so after being assessed therefor and warned thereto by the supervisor, the latter may deliver a statement of such delinquency to the sheriff, with the amount necessary to discharge it, to-wit, two dollars for each day's work, who shall thereupon collect the same by seizure and sale of the personal property of the delinquent; and if such property cannot be found out of which to make such tax, the sheriff shall demand the amount from any person indebted to such delinquent, and collect the same out of his personal estate, unless he makes oath that he is not indebted to such delinquent; and the sheriff shall receive for his services a sum equal to one-fourth of such delinquent tax, besides his lawful fees, to be paid by the delinquent or collected with the tax.

*Held: Semble,* that a demand for a delinquent tax from a third person is not valid, unless it appears therefrom (1) that the officer had not been able to make the same out of the delinquent's property; (2) that it contained a statement or allegation to the effect that unless the party paid the amount, or made oath that he was not indebted to the delinquent, the officer would proceed to collect the same out of his personal estate; and (3) that it was not for a greater sum than the tax, and one-fourth thereof in addition, as a compensation to the sheriff for making the demand and receiving the money; and no other fees are demandable or chargeable thereon, unless the officer is forced to make the collection by seizure and sale of property, for which he is entitled to the usual fees for such service, in addition to such one-fourth.

2. SAME—WHO LIABLE TO PERFORM.

Certain Chinese laborers came to this state to engage in labor upon public works, and on April 1, 1882, were in road district No. 8, in Multnomah county, at work on the construction of a railway from Portland to the Dalles and east-ward, where they remained a few months, passing through and beyond the district as the road-bed was completed, without any purpose or occasion to remain longer in the district or ever return there. *Held,* that they were not "residing" in said district on or before April 15th, within the meaning of the statute, so as to be liable to perform road labor therein.

In Equity. Suit for injunction.

*William H. Effinger,* for plaintiffs.

*George W. Yocum,* for defendants.

DEADY, D. J. This suit is brought by a Chinese firm of this city called On Yuen Hai Company, composed of four persons whose names are given in the bill, and 16 other such firms, composed of one or more persons each, to restrain the defendant Sears, as sheriff of Multnomah county, and the defendant Ross, as supervisor of road district No. 8 therein, from collecting from them or the Oregon Railway & Navigation Company, by seizure and sale of their goods and chattels, or otherwise, the sum of four dollars per head, claimed by said defendants to be due from each of 1,449 Chinese laborers in the employ of the plaintiffs as laborers upon the railway of the said Oregon Railway & Navigation Company.

Upon the filing of the bill, by consent of the parties, a preliminary injunction was allowed, and afterwards the cause was heard upon the bill and answer.

The bill is drawn upon the theory that these Chinese laborers were not only not liable to do road work in district No. 8, but that the proceeding taken by the defendants to enforce the payment of a money tax as a substitute therefor is wholly unauthorized by law.

By the laws of this state it is provided that each road supervisor shall, on or before April 15th of each year, "make out, in alphabetical order, a list of all persons liable to perform labor on the public

roads residing within his district," and assess two days' work on such roads to each of such persons. Females, persons under 21 and over 50 years of age, and those who are a public charge or too infirm to labor, are exempt from road work; and any one may pay two dollars to the supervisor in lieu of any such day's work.

If any person subject to road labor as aforesaid shall, after three days' notice from the supervisor, "personally or by writing left at his usual place of abode," neglect or refuse to perform said labor, "such delinquent shall thereby become liable to the supervisor for the amount of this road tax in money; and such supervisor shall proceed at once to collect the same by levy and sale" of his property.

If sufficient property of the delinquent out of which to make the tax cannot be found, the supervisor must proceed against him by action, and the judgment therein may be enforced as for a fine in a criminal action. Or. Laws, pp. 726, 728, §§ 21, 22, 24, 27.

Such was the statute until October 24, 1866, when "An act to facilitate the collection of taxes in certain cases" was passed, which provided as follows:

Section 1. "Any officers charged with the collection of any tax, who cannot find personal property out of which to make the same, shall demand such tax from any person who may be indebted to such tax-payer, and shall collect the same out of his personal estate, unless he shall take and subscribe an oath that he is not indebted to such tax-payer, which oath may be administered by such collector."

Section 2 authorizes the assessor to collect the poll tax at the time of assessing the same, and in default of such payment he is required to give the sheriff a list of such taxes, who must collect the same by the levy and sale of property, or "in the mode directed in the preceding section."

Section 3 provides: "If any person liable to perform labor on the public roads * * * shall fail to do so when warned, * * * the supervisor shall immediately give to the sheriff a statement of such delinquent road work, * * * showing the amount that will discharge the same in money, and the sheriff shall immediately collect the same in the manner aforesaid, and pay it to such supervisor." This section also provides that "the sheriff shall receive for his services," under said sections 2 and 3, "a sum equal to one-fourth part of the delinquent tax, besides his lawful fees, to be paid by the delinquent or collected with the tax." Or. Laws, pp. 769, 770, §§ 101–103.

Upon this hearing the answer is taken for true; and, reading it in the light of the circumstances and the uncontroverted allegations of the bill, the material facts of the case appear to be as follows:

About February, 1882, these Chinese laborers came to Oregon, and were employed upon the railway then being constructed by the Oregon Railway & Navigation Company between Portland and eastern Oregon via the Dalles, under contract with the plaintiffs to that effect, and that they have no fixed residence in the country and expect to return to China at some future day; that road district No. 8 is a political division of Multnomah county, including, as appears from the public records thereof, all that portion of the county which lies to the east of the Sandy river, the west line of the same being about 18 miles east of Portland; that on April 1, 1882, said Chinese laborers were in said district at work upon the construction of said railway, the line of which runs through said district on the south bank of the Columbia river for the distance of about 20 miles, where they remained not to exceed four months thereafter, passing through and beyond the district as the road-bed was completed, without any purpose or occasion to remain longer therein, or to ever return thereto; that while said laborers were in said district, and before April 15th, the defendant Ross, as supervisor of said road district, listed them as persons residing therein, and liable to perform work on the public roads thereof, as Nos. 1, 2, 3, 4, etc., of the company by which they were employed, and did assess against each of them two days' work to be performed upon the roads in said district; that thereafter, and while said Chinese were still in said district, said supervisor did duly notify them by the description aforesaid to work on the roads of said district, which they neglected and refused to do, and being unable to find any property of said Chinese out of which to make said delinquent tax, said supervisor, on July 8th, delivered to the defendant Sears, as sheriff, a statement in writing thereof, with the sum of money which would discharge the same, to-wit, four dollars per head, "not including costs and expenses;" and that thereafter, on August 12th, said sheriff did "garnish" each of the plaintiffs, and the Oregon Railway & Navigation Company, by delivering to each of them true copies of said statement, and "a notice of garnishment," to the effect "that by virtue of a warrant for the collection of road tax issued" by said supervisor to said sheriff, "all debts, property, moneys, rights, dues, or credits of any value" in their hands or under their control, "and especially a certain sum of six dollars belonging to each of the Chinamen" in their employ, designated and numbered as aforesaid, "*is* hereby levied upon and garnished, and you are hereby required to furnish forthwith a written statement of all such property or credits."

The objection to the proceeding pursued by the defendants for the collection of this tax, that a garnishee process cannot be maintained except in aid of an attachment or execution issued from a court of justice in a judicial proceeding, assumes that this is a technical garnishment, and overlooks the statute (October 24, 1866, *supra*) which expressly authorizes the collection of delinquent road work or tax in the contingency stated—when it cannot be made out of the personal

property of the delinquent—by demanding and receiving the amount of the same from any debtor of the delinquent. The fact that the defendant Sears appears to have erroneously assumed that he was acting under an ordinary garnishment in an action at law does not make the proceeding such an one, or vitiate it, provided the statute governing it is substantially complied with.

The method of collecting or enforcing a tax is altogether within the discretion of the legislature, unless otherwise provided by the constitution. Cooley, Tax. 36 *et seq.*

Assuming, then, that this road labor was duly assessed upon these Chinese laborers, and that they neglected to work it out or pay the equivalent in money after being duly warned thereto, it became the duty of the supervisor to make and deliver to the sheriff a statement of the facts showing their delinquency in this respect, whereupon it became the duty of the sheriff to collect the amount due from each by a seizure and sale of his personal property, and, in default of that, to demand the amount from any debtor of the delinquents, including the plaintiffs. Whether these laborers were duly warned or not, upon the facts stated in the answer, is not free from doubt. But it is alleged in the answer that they were known by the numbers and designation used, and my impression is that it was sufficient.

The allegation in the supervisor's statement concerning the indebtedness of the plaintiffs and the Oregon Railway & Navigation Company to the delinquents, is unauthorized and superfluous. His duty is discharged when he furnishes the sheriff with a statement of the delinquency and the amount which will discharge it.

But the proceeding of the sheriff upon the supervisor's statement seems to have been very irregular, if not illegal. Instead of making a demand upon the plaintiffs for the payment of the delinquent tax, or an oath that they were not indebted to them, accompanied by his own statement that he had not found any personal property out of which to make the same, he seems to have proceeded upon the assumption that he was executing a garnishee process in aid of an attachment or execution in a judicial proceeding, and, without other demand or any statement as to the delinquent's property, served a notice upon the plaintiffs, such as is usual, I suppose, in cases of garnishment, stating that all money, etc., in their hands belonging to the delinquents, and "especially a certain sum of six dollars," were "thereby levied upon and garnished."

Now it is very doubtful if this is a demand at all; and if it should be so construed as for six dollars, I am quite certain that it was an

insufficient and illegal one, for the reasons following: (1) It does not appear therefrom that the sheriff had endeavored and failed to make the amount out of the property of the delinquent, and therefore it does not appear that he was yet authorized to make any demand for it on a third person. It is true that it is alleged in the bill that the delinquents had no property out of which the money could be made. But that is not sufficient. It should have been so stated or alleged in the demand, as a necessary condition to the right to make the same. This demand is a substantial step in an adverse proceeding, whereby a debt due to a delinquent tax-payer is in effect transferred to the sheriff or road district without the consent of either the debtor or creditor. The facts which authorize it to be made, and will justify the debtor in yielding to it and constitute a valid discharge of the debt when paid to the sheriff, ought to appear upon the face of it. If the debtor pays upon an insufficient or unauthorized demand, the debt is not discharged, and he is still liable for it to the tax-payer. (2) It is in excess of the sum due. The amount necessary to discharge the liability of each of these Chinese laborers was four dollars. The statute (Or. Laws, p. 770, § 103) provides that the sheriff shall receive for his services in this respect "one-fourth part of the delinquent tax, besides his lawful fees, to be paid by the delinquent or collected with the tax." If the amount is paid on demand, there can be no "fees" earned, and the compensation of the sheriff is confined to this one-fourth of the tax, which he may include in the demand. He could only earn "fees" after a refusal to pay, in the seizure and sale of personal property, which would be the same, I suppose, by analogy, as for like services upon an execution. This demand, then, should have been for four dollars, and the the one-fourth of that sum for the sheriff's compensation—five dollars in all. The act of October 22, 1864, (Or. Laws, p. 727, § 25,) authorizing the "supervisor," in the collection of a delinquent road tax, to add "20 per cent. thereon" in case the same is not paid until after a levy upon the delinquent's property, has no application to this proceeding by the "sheriff" to collect a tax under the act of October 24, 1866, *supra;* and if it had, it does not authorize the demand or collection of this 20 per cent. until after a levy. But the two penalties of one-fourth and 20 per cent. of the tax are not cumulative. They are given by different acts, which provide for different proceedings under different officers; and, even with the 20 per cent. added to the one-fourth, the amount would be only five dollars and eighty cents, instead of the sum demanded—six dollars.

Besides this, I am strongly of the opinion that a valid demand of a delinquent tax from a third party, on the ground of his indebtedness to the delinquent, should not only show upon its face that the amount could not be made out of the personal property of the latter, but should also contain a statement or allegation to the effect that unless the same was duly paid by such party, or he made his oath that he was not indebted to the delinquent, the amount of tax and penalty, together with the accruing costs or fees, would be collected out of his personal property by seizure and sale thereof. But I will not rest the decision of this case upon the insufficiency of this demand. The question was not argued upon the hearing, the counsel for the plaintiffs having rested his objection to the validity of the proceeding upon the ground that the act of October 24, 1866, *supra*, did not apply to the collection of a road tax at all, and therefore this tax could not be demanded or collected from any creditor of the delinquents except by means of a regular garnishment in aid of an execution issued upon a judgment at law, under the act of October 22, 1864, *supra*, against such delinquents therefor.

Waiving, therefore, the further consideration of the mode of proceeding to enforce the tax, were these Chinese laborers liable to perform road labor in district No. 8 under the circumstances of their presence there? The provisions of the statute upon the subject are somewhat indefinite, but it is evident from what is provided, and from the nature of the case, that persons only transiently in the district are not within its purview or operation. The party must be "residing" within the district, when the "list of persons liable to perform labor on the public roads" is made by the supervisor,—that is, on or before April 15th,—and the notice to labor, if not served on him personally, must be left at his usual place of "abode." The legal definition of the cognate terms, "residence" and "domicile" vary with the circumstances of the case, and the mental constitution of judges and authors. The differences of definition and application of the terms in various circumstances may be seen in Abb. Law Dict. "Reside." Residence generally imports a personal presence, whereas, one may have a domicile in a place from which he is absent most of the time. But residence implies more than a temporary sojourn in a place.

Personal taxes are generally imposed in the place of one's domicile—the place of his fixed habitation, without any present intention of removing therefrom. Story, Confl. Laws, § 43; Whart. Confl. Laws, §§ 74, 80; *Thorndike* v. *City of Boston*, 1 Metc. 242. But doubtless a person may be a resident elswhere than at the place of

his domicile for such a length of time and under such circumstances as to be liable to personal taxes there. A citizen of a foreign state, or one of the United States, who comes to Oregon, in the pursuit of business or otherwise, with the intention of remaining here some years and then returning to his home or domicile, becomes a resident of the state, and liable, like other residents, to pay poll and other personal taxes in the county or district in which he may live. But it is not enough that a person is a resident of, or even domiciled in, the state; he must also be a resident of the particular road district in which he is assessed for road labor. To make a person a resident of such a district so as to become liable to do road work therein, in my judgment, he must inhabit the same with the intention of remaining there indefinitely, or at least have resided therein a year. The duty is an annual one,—to be performed once a year,—and this circumstance itself sheds some light upon the relation which the party is presumed to sustain to the locality in which he is expected to work. In effect, the statute provides that certain residents of the road district shall work the roads once a year, and it is but reasonable to conclude, in the absence of anything to the contrary, that the statute contemplates that such residents shall have enjoyed the privilege of at least one year's inhabitancy of the district before the corresponding duty of working the road begins. The road tax upon property in the district is assessed by the assessor at the same time this personal tax is, but not upon the property *then* owned by the resident, but upon that contained in the assessment of the preceding year for state and county purposes.

This construction of the statute makes the provisions for the personal and property tax harmonize, as they should. The latter is levied upon the property of the past year, and the former upon the residence or inhabitancy of the same period. By this means the burden of maintaining the roads of a district is so far equally imposed upon the property and persons therein.

It is not denied that the legislature may provide that every person who is found in a particular road district, on a certain day in the year, shall be liable to do road work therein for that year; and, while it is not probable that any such extreme measure will be resorted to, it would be well to have some practical definition of what constitutes a residence in a district necessary to make one liable to do road work therein.

Attention has not been called to this subject, because, I suppose, as is well understood, only the permanent residents of a district have

usually been required to work the roads; and if these laborers had been European instead of Asiatic foreigners, it is not probable that any one would have thought of attempting to make them work the roads, under these circumstances, as residents of road district No. 8. The statute makes no discrimination in this matter between Chinese and other foreigners, and it is not only contrary to the treaty with China, but to the dictates of natural justice, that any should be made in the administration of it.

My conclusion upon this branch of the case is that these Chinese laborers were never residents of road district No. 8 within the meaning of the statute, but only persons transiently there,—persons passing through the district in the construction of the Oregon Railway & Navigation Company's railway,—and therefore they were never liable to perform road labor therein.

No question has been made as to the right of the plaintiffs to maintain this suit, and I suppose there is no doubt but they may, upon the ground of preventing a multiplicity of suits. 2 High, Injunc. § 1308.

A decree will be entered for a perpetual injunction and costs.

---

The expression in a statute, "coming and residing within this state," extends to a person residing in it at the time of the passage of the act. To gain a settlement by the payment of taxes, there must have been an *assessment* and *payment;* but whether the assessment and payment of a highway tax in labor is a public tax, within the meaning of the statute, *quære. Starksboro* v *Hinesburgh*, 13 Vt. 215. In New York it has been held not the payment of a tax, and no settlement is gained thereby. *Amenia* v. *Stanford*, 6 Johns. 92. Road taxes assessed against lands are a personal charge upon the owner, and the opportunity to be given to work out such taxes is a condition precedent to collection by legal process. *Miller* v. *Gorman*, 38 Pa. St. 309. And when assessed against non-residents the tenants in possession have the right to work them out. Id. A commutation of a tax may be made when not forbidden by the constitution, but it must not discriminate between classes of individuals, for if it does it is void. *Cooper* v. *Ash*, 7 Chi. Leg. News, 393. So an assessment of four dollars or two days' work on each male resident between certain ages is a poll tax, and is forbidden by the state constitution. *Hassett* v. *Walls*, 9 Neb. 387. An assessment for road labor is not a capitation tax, and a city may compel those over 60 years of age to labor, although they are exempt from payment of a capitation tax. *Fox* v. *Rockford*, 38 Ill. 451. So the commissioners of a town may be authorized to call out the hands, and command personal labor in the repairs of streets, (*State* v. *Com'rs of Halifax*, 4 Dev. 345;) but the inhabitants are not bound to labor outside of their corporate limits, (*Town of Pleasant* v. *Kost*, 29 Ill. 490; and see *Mc-Bride* v. *Chicago*, 22 Ill. 573; *Peoria* v. *Kidder*, 25 Ill. 351.)—[ED.