### ALASKA PACKERS' ASS'N v. HEDENSKOY.*

(Circuit Court of Appeals, Ninth Circuit. September 7, 1920. Rehearing Denied October 18, 1920.)

No. 3493.

1. **Taxation ☞106—Salmon fishers temporarily within territory liable for Alaska school tax.**

    Men employed by a salmon packing company, who were employed within the territory of Alaska for several months, though they were hired and finally paid off and discharged in California, are subject to the school tax imposed by Act Alaska May 1, 1919 (Laws 1919, c. 29), on all male persons within the territory.

2. **Taxation ☞106—Persons or property temporarily within state for business or profit subject to taxation.**

    Nonresidents of a state, temporarily engaged in business therein, like personal property owned by nonresidents, but temporarily used within the state for profit, acquire a situs for taxation within the state.

3. **Taxation ☞586—Telegraphic demand for payment of Alaska school tax on employés held sufficient to fix liability.**

    A demand by telegram on a salmon packing company for the payment of the Alaska school tax levied on its employés is sufficient demand, under section 4 of the act levying the tax (Laws 1919, c. 29), to render the employer liable for the tax, and thereby entitled to deduct it from his employés' pay, though the blanks and receipt books required by sections 8 and 10 of the act were not furnished by the collector.

Appeal from the District Court of the United States for the First Division of the Northern District of California.

Libel by John Hedenskoy against the Alaska Packers' Association. Decree for libelant, and respondent appeals. Reversed and remanded, with directions to render a decree for respondent.

In April, 1919, libelant and certain assignors, residents of California, were hired by the defendant, a California corporation, salmon fisher and packer, and shipped for a fishing venture to Alaska and return to San Francisco, agreeing to work as seamen and fishermen, beachmen, and trapmen. After they had unloaded cargo at a point in Alaska, they worked as salmon fishermen during the salmon run, or about 35 days, and then loaded canned salmon on ships bound for San Francisco, there to be distributed to other places. Except for a small sum, the earnings of libelant and his assignors were payable in San Francisco.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 149, 65 L. Ed. —.

On May 1, 1919, the Legislature of Alaska passed an act to impose a tax upon male persons in Alaska for school purposes (Laws 1919, c. 29), "providing means for its collection." Section 1 is as follows: "There is hereby made, imposed and levied upon each male person, except soldiers, sailors in the United States Navy or Revenue Cutter Service, volunteer firemen, paupers, insane persons or territorial charges, within the territory of Alaska or the waters thereof, over the age of twenty-one years and under the age of fifty years, an annual tax in the sum of five dollars, to be paid and collected in the manner provided in the following sections of this act, and to be deposited by the treasurer of the territory of Alaska in a separate fund called the 'school fund' and used for no other than school purposes." Section 2 provides for the method of appointment of the school tax collector. Section 3 provides for advertisement by the school tax collector by notice, setting forth that the tax is due and payable and warning persons of the need of payment. Section 4 makes the tax payable between the first Monday in the month of April and the first Monday in the month of August of each year: "Provided, that all persons subject to the tax who are in the territory of Alaska on the first Monday in the month of April shall pay said tax on or before the 1st day of May in the same year, and all persons arriving in the territory of Alaska after the first Monday in the month of April shall pay said tax within thirty days after such arrival: Provided, further, that all persons subject to said tax shall pay the same within ten days after a written or oral demand by the said school tax collector made within the period between the first Monday in April and the first Monday in August in each year." Section 8 provides that the school tax collector shall demand, and it shall be the duty of every person or corporation employing labor in Alaska to furnish such collector upon demand, a list of employés subject to the tax imposed "and for this purpose the territorial treasurer shall furnish to each school tax collector suitable blank forms for the making of such lists, which blank forms shall be delivered by the school tax collector to the employers of labor aforesaid." The employer is required to deduct from the wages of each of its employés subject to the tax the amount thereof. By section 10 the treasurer of the territory shall, before the first Monday in the month of April in each year, deliver to each school tax collector blank tax receipts in book form with stubs numbered. Section 13 provides that the tax imposed by the act shall be due and payable "as to all persons within the territory subject to said tax at the time of the passage of this act, immediately upon its passage and approval, and, as to all persons arriving in the territory after the passage of the act, as elsewhere in this act provided."

On August 12, 1919, the school tax collector for the Bristol Bay school district, where the libelant was during the time he was in Alaska in 1919, by telegram demanded that the corporation pay the tax of all of its employés, and the bookkeeper of the corporation presented a statement to the libelant and his assignors showing the deduction of $5 each for the tax, but libelant and his assignors refused to agree to the payment with the deduction included. Thereafter, in September, 1919, the corporation, without the knowledge or consent of the libelant or any of his assignors, paid the tax.

Chickering & Gregory, of San Francisco, Cal., and J. C. Murphy, Atty. Gen., for appellant.

H. W. Hutton, of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] We agree with the District Court in its view that the libelant was subject to the tax involved, but we disagree with the decision, which was that the necessary steps were not taken whereby to fix liability. Libelant was not a mere sojourner, bound through Alaska for another place. He agreed to perform work within the territory during the fishing sea-

son of 1919. The hours, compensation, and the nature of the work to be done are all set forth in detail in the contract, which also requires that libelant should be given a statement of the Alaska account before the vessel sailed for her home port. The enterprise became one which called for substantial employment within Alaska, and we think it is immaterial that the season for actual salmon fishing was only about 35 days. It is to be noted, however, that the shipping articles were signed in San Francisco in the beginning of April, 1919, and that the men arrived in Alaska in May and June, and left Alaska, bound for San Francisco, about the middle of August, reaching San Francisco the latter part of August. The period of employment, therefore, extended over some 5 months, 3 months of which were in Alaska.

In Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359, the officials of the territory of Wyoming endeavored to levy a tax upon a band of sheep which were being driven across Wyoming and into Nebraska. The question turned upon the purpose for which the sheep were driven into Wyoming. The court recognized that, if the purpose of bringing the sheep into the state was for grazing, then they could be assessed; but, if the purpose was only to drive them through the state to a market, they would be exempt as a subject of interstate commerce, although they might incidentally have supported themselves in grazing while actually in transit. In Fennell v. Pauley, 112 Iowa, 94, 83 N. W. 799, a resident of Missouri drove a band of cattle for feeding purposes into Iowa and kept them in Iowa for 6 months, and then took them back to Missouri. The Supreme Court of Iowa held that the cattle could be properly assessed within Iowa because they were within the state to be fed therein, and not merely to remain there temporarily to be transported elsewhere. In Grigsby Construction Co. v. Freeman, 108 La. 435, 32 South. 399, 58 L. R. A. 349, a resident of Texas owned certain personal property, which was taken to Louisiana to be used in certain railroad grading. Upon the question whether the imposition of a tax within Louisiana was valid, the Supreme Court of the state cited Brown v. Houston, 114 U. S. 633, 5 Sup. Ct. 1091, 29 L. Ed. 257, and held that the determinative factor was whether or not the property was within the state of Louisiana for use likely to be of some duration as distinguished from transit, and that the matter was not to be disposed of by the fact that the owner of the property intended at a future time to remove the property. The doctrine recognized is that, if the main purpose of the presence of the personal property is to devote it to a use within the state to which it has been removed, then it has a taxable situs within the state. In Eoff v. Kennefick, Hammond Co., 96 Ark. 138, 96 S. W. 986, 7 L. R. A. (N. S.) 704, 117 Am. St. Rep. 79, 10 Ann. Cas. 63, a local assessor assessed certain horses and implements which had been brought into the state by a construction company in carrying out a railroad contract. The owners of the property lived in Missouri. The Supreme Court of the state held that under the familiar rule recognized by the Supreme Court of the United States in Pullman Car Co. v. Pennsylvania, etc., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613, and other cases, personal property could be separated from its owner for taxation pur-

poses and that the property was not in transit, but was in Arkansas chiefly for use and profit.

[2] It is well established that taxation of personal property which may be temporarily within a state, but used therein for profit, is lawful, although the owner has his domicile in another state; and by like reasoning we hold that one who is in a territory for the purpose of carrying on a business during the season when such business is properly and usually carried on, is subject to tax within the district where the business is carried on, and the assessment is not invalid by reason of the fact that the permanent residence of the person assessed is not within the jurisdiction where such tax is levied. In the Chinese Tax Cases (C. C.) 14 Fed. 338, it was held that some Chinese laborers, who were taken into Oregon to engage in labor upon a railroad, were not residents within the district wherein they labored.

[3] There remains the question whether or not proper steps were taken to enforce payment against the libelant for the year 1919, so that the appellant corporation is legally bound. By section 4 of the act, all persons subject to the tax shall pay it within 10 days after written or oral demand by the collector made between the first Monday in April and the first Monday in August of each year. Inasmuch as the liability to pay the tax was fixed by the act, we think the demand by telegram on August 12th was a sufficient compliance with the statute in order to establish delinquency, and that upon failure to pay the delinquents became subject to the penalties provided by section 5 of the act, which makes all taxes delinquent if not paid within the time prescribed in section 4, or within 10 days after demand by the tax collector as prescribed in the act, and provides that each person delinquent shall be subject to a penalty. It would be most technical to hold that, because the collector failed to furnish the blank forms and receipt books required by sections 8 and 10 of the act, the libelant should escape liability. The blanks were not delivered to the collector by the treasurer of the territory; but it appears that before the statements were given to the men the collector looked through the books of the corporation, which showed the names of the employés, and that when the statements of account were given to the men by the corporation, such statements disclosed a charge of $5 for the tax in each instance. In this way the tax collector gained the same information that would have been furnished to him, if the blanks had been available and filled out. Nothing in Callaghan v. Marshall, 210 Fed. 230, 127 C. C. A. 48, calls for a different view.

Our judgment being that the libelant and his assignors became liable to pay the tax, and that the proper steps to enforce payment for 1919 were taken, the decree will be reversed, and the cause remanded, with directions to enter a decree in favor of the association.

Reversed.