**UNITED STATES of America,**
**Plaintiff**

v.

**Theodore ULLMAN, Lillian Ullman, United Benefit Life Insurance Company and Fidelity-Philadelphia Trust Company of Philadelphia, Pennsylvania, Defendants.**

**Civ. A. No. 14964.**

United States District Court
E. D. Pennsylvania.

Dec. 17, 1959.

Walter E. Alessandroni, U. S. Atty., James J. Phelan, Jr., Asst. U. S. Atty., Philadelphia, Pa., for United States.

David W. O'Brien, Morgan, Lewis & Bockius, Philadelphia, Pa., for Fidelity-Philadelphia Trust Co.

CLARY, District Judge.

This matter is before the Court on a cross motion for summary judgment filed by the United States and the Fidelity-Philadelphia Trust Company (hereinafter referred to as the "bank"). The parties have stipulated to the essential facts. These facts raise a narrow question of law, the answer to which will in turn determine the relative priority of the moving parties to certain proceeds from an insurance policy deposited in this court under a decree of interpleader. The Government claims these proceeds by virtue of a Federal tax lien, Title 26 U.S.C. § 3670 of the Internal Revenue Code of 1939 (or what is now Section 6321 of the 1954 Code). The bank claims a large part of them as pledgee of the insurance policy, Title 26 U.S.C. § 3672 (a).

Theodore Ullman was owner and his wife beneficiary under an insurance policy with United Benefit Life Insurance Company. Said Ullman was deficient in his income taxes in the total amount of $89,053.88 at the end of 1948, assessments with respect to which were made on August 31, 1951, by the Commissioner of Internal Revenue. On February 9, 1951, Ullman had pledged the insurance policy in question with the bank to secure a loan for $3,000, surrendering the actual physical policy to the bank in Philadelphia. The Collector of Internal Revenue for the First Collection District of Pennsylvania received the list concerning the tax assessments on September 4, 1951 and issued notice and demand for payment on that day, Title 26 U.S.C. § 3671. Ullman failed to pay. On September 12, 1951, the Collector filed a notice of Federal tax lien with the Prothonotary of Berks County, Pennsylvania, where the taxpayer *resided* and also with the Clerk of the Federal District Court for the Eastern District of Pennsylvania. No such notice was ever filed with the Prothonotary of Philadelphia County.

On September 27, 1951, Ullman borrowed an additional $20,000 from the bank on the pledged policy. The insurance certificate remained with the bank in Philadelphia. No part of the bank's loans had ever been repaid.

After the Government brought suit to recover the current surrender value of the policy ($34,362.50), the insurer moved to interplead the fund. A decree for interpleader was entered by this Court on June 18, 1953. The Government seeks the total amount now deposited in the Registry of the Court, less only the $3,000 secured by the original pledge made prior to the time the Federal tax lien was filed. The bank in opposition claims a further right to $20,000 secured by the later pledge, on the grounds that the Government failed to file its notice of Federal tax lien at the proper place, and thus is subordinate to the "pledgee" bank under Title 26 U.S.C. § 3672(a).

Section 3670 of Title 26 U.S.C. gave to the Federal Government "a lien * * * upon all property and rights to property whether real or personal, belonging to [a taxpayer who neglects to pay his taxes after demand]". Such a lien would arise in point of time on the date the assessment list is received by the Collector and demand is made upon the taxpayer—in this case, September 4, 1951. Title 26 U.S.C. § 3671. The bank would therefore have no possible claim to the further $20,000 (the pledge for which was made on September 27, 1951), were it not for

Section 3672(a) of Title 26 U.S.C. This section reads as follows:

"(a) *Invalidity of Lien Without Notice.*

"Such a [tax] lien shall not be valid as against any * * * pledgee * * * until notice thereof has been filed by the collector—.

"(1) *Under State or Territorial laws.*

"In the office in which the filing of such notice is authorized by the law of the State * * * in which the property subject to the lien is situated, whenever the State * * * has by law authorized the filing of such notice in an office within the State. * * *"

■ This section immediately raises two questions. First, in what state is the "property" (i. e., the insurance policy) allegedly subject to this tax lien situated? Second, has the required notice been filed by the United States "in accordance with the law of [that] state?"

The first question must be answered with reference to Federal law. Both parties agree to this. The bank suggested that the answer to this first question might be Nebraska, the place where the insurance company was domiciled. This argument does not appear to have much weight and counsel for the bank did not seriously urge it at oral argument. See United States v. Penn Mutual Life Ins. Co., 3 Cir., 1942, 130 F.2d 495, 142 A. L.R. 888; United States v. Royce Shoe Co., D.C.N.H.1956, 137 F.Supp. 186.

Moreover Congressional policy favoring the success of federal tax enforcement over rigid property concepts would not be furthered by viewing the property interest in an insurance policy as located in the state of the insurance company's domicile. Nor would such a holding coincide with the realities of general commercial practice. The real issue appears to be a choice between the *domicile* of the insured (or the beneficiary, which in this case is the same) and the situs of the physical writing embodying the insurance contract. Either choice brings us to Pennsylvania, and in turn to the second and more difficult question in this case, i. e., was the notice of the tax lien filed properly in accordance with the law of Pennsylvania in Berks County?

This question is controlled by Pennsylvania law. Reiter v. Kille, D.C.E.D. Pa.1956, 143 F.Supp. 590. The applicable Pennsylvania statute is the Act of May 1, 1929, P.L. 1215, Section 1, 74 P. S. § 141, which provides as follows:

"Notices of liens for taxes payable to the United States of America, and certificates discharging such liens, shall be filed by the collector of internal revenue in the office of the prothonotary of the county or counties in this State within which the property subject to such lien is situated."

We must determine where, under the terms of the Act, the property in an insurance policy is "situated". The Government argues that the answer must be at the place of its owner's domicile (Berks County); the bank maintains that the situs (Philadelphia County) of the written certificate (which embodies the rights under the policy) is the proper interpretation to be given this statute. Upon the answer to this question depends the relative rights of the parties to a large part ($20,000) of the interpleaded fund.

The Court has been unable to find any Pennsylvania cases which are helpful on this matter. There are no Federal court decisions based upon the Pennsylvania statute which are of any assistance. The answer seems to lie in a determination of what Pennsylvania common law was with regard to the situs of personalty at the time the State Legislature passed this Act.

Counsel for the Government has cited a number of cases which support the "domicile" theory. West Coast Credit Corp. v. Renfro, D.C.W.D.Wash.1958, 167 F.Supp. 480; In re Cle-Land Co., Inc., D.C.D.Mass.1958, 157 F.Supp. 859;

United States v. Royce Shoe Co., D.C.D. N.H.1956, 137 F.Supp. 786; Grand Prairie State Bank v. United States, 5 Cir., 1953, 206 F.2d 217; Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894.

The Court in turn has uncovered several cases which lend further support to the Government's position: United States v. Metropolitan Life Ins. Co., 4 Cir., 1958, 256 F.2d 17; Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 1940, 114 F.2d 380; United States v. Jane B. Corp., D.C.D.Mass.1958, 167 F. Supp. 352; Weir v. Corbett, D.C.W.D. Wash.1957, 158 F.Supp. 198. Nevertheless we do not view any of these cases as controlling, although they do have some weight, particularly in light of 74 P.S. § 146, which calls for that construction of the Uniform Federal Tax Lien Registration Act which will "effectuate its general purpose to make uniform the law of those States which enact it." Their value is somewhat diminished by the fact that the issue in this case ultimately turns upon Pennsylvania law, while the above cases involved recording statutes of various other states. It is true that Pennsylvania statute is taken from the Uniform Federal Tax Lien Registration Act, 9B Uniform Laws Annotated, and perhaps some of those cases cited involved state statutes similar to our own. However, the interpretation of this rather somewhat vaguely worded act necessarily turns on the common law of each state. Moreover, in most of the cases cited above, the issue here presented was not squarely passed upon. Some involved dictum; others were so vague in their reasoning as to be inconclusive.

The bank in turn could cite no authority in this area directly supporting the "locus of the certificate" theory. It took a more broad approach by strenuously attacking the old common-law rule of "mobilia sequuntur personam" as no longer the law of Pennsylvania. Relying on several scholarly works in the field of conflicts, their brief traced the history of this maxim in an attempt to illustrate its rejection in many of the more recent cases. They further cite two general groups of Pennsylvania cases, in support of their contention that the situs of an insurance policy is at the place where the writing itself is.

The first of these are the cases upholding the gift of an insurance policy by delivery of the written certificate. Wells v. Archer, 1823, 10 Serg. & R. 412; Hani v. Germania Life Insurance Co., 1900, 197 Pa. 276, 47 A. 200; General American Life Insurance Co. v. Sutch, D.C.E.D. Pa.1939, 31 F.Supp. 192. The Court is not persuaded by this line of cases since we view them as merely representing a relaxation of strict property concepts to effect the clear *intent* of the donor, which is generally the sole and controlling issue in gift cases.

The other cases relied upon involve the rigorous enforcement of support orders against a husband who has deserted his wife. Crane v. Crane, 1953, 373 Pa. 1, 95 A.2d 199; Luick v. Luick, 1949, 164 Pa.Super. 378, 64 A.2d 860; Jones v. Jones, 1942, 344 Pa. 310, 25 A.2d 327. The courts upheld the attachment of various intangible assets belonging to the husband, such as stocks, partnership assets, and the future interest in a trust fund, all of which were held to have a situs in Pennsylvania, although the whereabouts of the husband was either unknown or without the Commonwealth. Aside from the fact that none of these cases involved an insurance policy, it seems evident that the urgency of the situation and the strong equitable appeal of such a case called for an abandonment of theory and as vigorous an exercise of jurisdiction as due process would allow. Neither the element of urgency nor equity appears to lie with the bank here.

 The law concerning the situs of a chose in action is presently unsettled. Particularly is this true with regard to the situs of an insurance policy. What may be found to constitute situs for tax purposes may not be so found for the purpose of applying a conflicts of law rule or for the exercise of jurisdiction in a support proceeding. The answer to

what rule was intended to be applied in the 1929 Pennsylvania Federal Tax Recording Statute can only be determined by a calculated guess. Counsel for the bank admits that the choice of the owner's domicile was the rule favored at common law. Although this rule could of course be changed by statute, there is no evidence to show that Pennsylvania intended to do so in 74 P.S. § 141. Whatever this Court might feel is the better rule of law, in the absence of authority to the contrary, I am constrained to view the law in Pennsylvania, at least at the time 74 P.S. § 141 was enacted, as that of the old common law. Reading this law into the Pennsylvania statute, it follows that the property interest in an insurance policy is situated at the domicile of the insured, which in this case is Berks County. Therefore, the Government has properly filed its tax lien in that county under the provisions of Title 26 U.S.C. § 3672(a) and must prevail here.

Practical considerations would lead us to the same result. The bank in its brief argues that to apply the common law rule would "create commercial chaos". We disagree. New York and Massachusetts, two of the largest commercial states in the country, have adopted this very rule by statute, so as to obviate the difficult problem with which we are faced. See §§ 240 and 241, N. Y. Lien Law, McK.Consol.Laws, c. 33; G.L.(Ter.Ed.) Mass. c. 36, § 24. The bank's reasoning would force the Federal Government to file a tax lien in every county to which the written insurance policy might be carried in order to prevail against a subsequent mortgagee, pledgee, good faith purchaser, or judgment creditor. It seems much more reasonable to ask the bank in such a situation to check the county of the insured's domicile for such liens. Indeed, it could be argued that, were the state law to require recording in any county into which the insurance certificate might by chance be taken, it would be so inimical to the Federal law of tax liens as to be unreasonable and therefore void. See Reiter v.

Kille, supra. If this were so, the Federal Government would still recover here, since the facts indicate that it recorded its lien with the Clerk of the District Court for the Eastern District of Pennsylvania as well. Section 3672(a) (2) of Title 26 U.S.C.

An order for judgment in accordance with the foregoing may be submitted. If the parties cannot agree on the amount of interest to be allowed the Fidelity-Philadelphia Trust Company, the Court will resolve any differences in its final decree.