**CORWIN CONSULTANTS, INC.,**
**Petitioner-Appellant,**

v.

**The INTERPUBLIC GROUP OF COMPANIES, INC., et al., Respondents,**

**Samuel A. Culbertson, II,**
**Respondent-Appellant,**

**United States of America,**
**Respondent-Appellee.**

**Nos. 303, 304, Dockets 74–1778, 74–1780.**

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1975.

Decided March 4, 1975.

---

Benedict Ginsberg, New York City, for petitioner-appellant Corwin Consultants, Inc.

Joel S. Stern, New York City (Maass, Levy, Friedman, Hirsch & Stern, New York City, on the brief), for respondent-appellant Samuel A. Culbertson, II.

Mel P. Barkan, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Gerald A. Rosenberg, Asst. U. S. Atty., on the brief), for respondent-appellee United States.

Before MEDINA, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

After cross motions for summary judgment, Judge Morris E. Lasker of the United States District Court for the Southern District of New York awarded the United States, because of its tax lien, priority in a fund being accumulated for taxpayer Marion Harper, Jr., 375 F.Supp. 186 (S.D.N.Y.1974). Corwin Consultants, Inc. and Samuel A. Culbertson, II, two other creditors of Harper and claimants to the same fund, appeal from that decision. Because we feel

that summary judgment was improperly granted, we reverse and remand for further proceedings.

## I

In 1968, Harper severed all connection with The Interpublic Group of Companies, Inc., a corporation with which he had been closely associated. Part of the severance agreement called for Interpublic to make periodic payments to Harper until 1976; these payments constitute the fund here in issue. Having determined that Harper owed income tax for 1968, the Internal Revenue Service filed notices of tax lien with the County Clerk of Westchester County, New York, in 1970, and with the City Register of New York in 1971. These liens have been satisfied and are not now contested. Meanwhile, Harper's other creditors obtained judgments against him in the New York state courts: Corwin for $52,346 in May 1972, and Culbertson for $608,180.90 in November 1972.[1] These judgments remain unsatisfied. During this period, the IRS determined that Harper owed more income taxes, this time for the years 1963, 1964 and 1965, and filed two more notices of tax lien on October 3, 1972. The first was filed at 10:32 A.M. with the City Register of New York, the second at 11:42 A.M. in Oklahoma City. At 12:51 that afternoon, Corwin perfected its judgment lien by delivering an execution to the Sheriff of New York.[2] On January 3, 1973, the IRS filed another notice of tax lien in Washington, D.C.[3]

Finally, Culbertson perfected his judgment lien on February 5, 1973.[4]

Corwin began this action in the New York state courts in 1973 to determine whose liens should have priority in the fund. The United States, as one competing claimant, removed the action to the court below. Thereafter, the United States and Corwin each moved for summary judgment. Judge Lasker granted the Government's motion and awarded the United States first priority, Interpublic second,[5] Corwin third, and Culbertson fourth priority.[6] It appears, however, that the claims of the United States for over $440,000 for back taxes and of Interpublic for approximately $8,200 for stakeholder's attorney's fees will exhaust the fund.

On appeal, Corwin contends that its judgment lien of October 3, 1972 entitled it to priority over the claim of the United States because the latter's notice filing earlier the same day was not effective. We find it unnecessary to decide that issue because we believe that the district court erred in awarding summary judgment when there were unresolved and crucial questions of fact before it.

## II

To explain the significance of the undetermined facts, the nature of tax lien priority must be understood. If a person neglects to pay any tax after demand, section 6321[7] of the Internal Revenue Code of 1954, 26 U.S.C. § 6321, provides that the amount shall be a lien in favor of the United States upon all property

---

1. Another creditor, Cowles Communications, Inc., obtained a judgment for $56,820.54 in June 1972.

2. Under New York law a judgment creditor does not become a judgment lien creditor until execution is delivered to the sheriff. N.Y. C.P.L.R. § 5202 (McKinney 1963). United States v. Pearson, 258 F.Supp. 686, 691 (S.D. N.Y.1966).

3. Appellants claim that evidence of this filing was not before the district court and thus should not be considered by us. In view of our disposition of this appeal, we need not reach this issue.

4. Cowles apparently has not perfected its lien.

5. No one has appealed the grant of priority to the stakeholder, Interpublic, and thus we do not deal with its claim.

6. Cowles, see notes 1 and 4 supra, was given last priority, and does not appeal.

7. Section 6321 provides:

   If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

belonging to such person. Section 6323(a)[8] states that the lien shall not be valid against any judgment lien creditor until notice thereof, which meets the requirements of subsection (f),[9] has been filed. Section 6323(f)(1)(A)(ii) provides that for personal property the notice shall be filed in the office designated by the state "in which the property subject to the lien is situated,"[10] and section 6323(f)(2)(B) states that personal property, including intangibles, is deemed situated "at the residence of the taxpayer at the time the notice of lien is filed."[11]

Section 6323(f)(2)(B) is relatively new. It was added by the Federal Tax Lien Act of 1966 (Pub.L. No. 89–719) to clarify "existing law by providing specific rules with respect to the place of filing a notice of a Federal tax lien . . .." 3 U.S.Code Cong. & Admin.News, 89th Cong., 2d Sess. 1966, at p. 3732 (S.Rep. No. 1708). Under prior law there had been some dispute as to where personal property, both tangible and intangible, was situated. Id. See United States v. Ullman, 179 F.Supp. 373 (E.D.Pa.1959). The courts and the IRS had, however, agreed in most cases that intangibles were located at the taxpayer's domicile.

3 U.S.Code Cong. & Admin.News, supra, at p. 3732; United States v. Webster Record Corp., 208 F.Supp. 412, 415 (S.D.N.Y.1962). When the drafters added section 6323(f)(2)(B), they deliberately avoided using domicile, however, and chose residence instead "because of the difficulty in determining a person's domicile, based as it is on (among other things) his state of mind." 3 U.S.Code Cong. & Admin.News, supra, at p. 3732. As we shall see, the choice of the word residence has created other problems.

We return now to the facts of this case. If the IRS notices were properly filed on October 3, 1972, the United States would be entitled to priority, as the court below held, because the filing preceded Corwin's perfection of judgment (and, a fortiori, Culbertson's). However, whether the IRS notices validated a priority lien as against Corwin depends on where the taxpayer's residence was on October 3, 1972. If it was in New York City or Oklahoma City, then the United States obtained such a lien on that date. Unfortunately, from the record before the district court, it is hard to tell where Harper then resided. At one time he was a resident of West-

8. Section 6323(a) provides:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

9. Section 6323(f) provides in part:

(1) Place for filing.—The notice referred to in subsection (a) shall be filed—

(A) Under State laws.—

. . . . .

(ii) Personal property.—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; or

. . . . .

(2) Situs of property subject to lien.— For purposes of paragraph (1), property shall be deemed to be situated—

. . . . .

(B) Personal property.—In the case of personal property, whether tangible or in-

tangible, at the residence of the taxpayer at the time the notice of lien is filed.
For purposes of paragraph (2)(B), the residence of a corporation or partnership shall be deemed to be the place at which the principal executive office of the business is located, and the residence of a taxpayer whose residence is without the United States shall be deemed to be in the District of Columbia.

. . . . .

10. N.Y. Lien Law § 240 (McKinney's Consol. Laws, c. 33, Supp. 1974) was changed in 1966 to reflect the new federal tax lien law and now essentially provides that for personal property owned by New York residents the notice shall be filed with the county clerk or city register where the taxpayer resides. See also Bankers Trust Co. v. Equitable Life Assur. Soc'y, 19 N.Y.2d 552, 557, 281 N.Y.S.2d 57, 227 N.E.2d 863 (1967).

11. For a taxpayer residing abroad, section 6323(f)(2) assigns a residence in the District of Columbia.

chester County, but it appears that his home there was sold in June 1971. After that date it is unclear where he lived. Various addresses have been discovered, including the Waldorf Towers, the Metropolitan Club, and c/o Lane, 280 Madison Avenue, all in New York City. The last American address that the IRS found for Harper was the Sheraton Hotel in New York City, where he apparently stayed from August 20, 1972 to September 13, 1972. At the Sheraton, Harper filled out a registration card indicating Oklahoma City as his residence, but that address turned out to be his parents' home and there is no evidence that Harper actually lived there. We were informed by the Government after oral argument that nine days after the filings in October 1972, the IRS learned of another possible address in Switzerland.[12] This apparently prompted the January 3, 1973 filing in Washington, D.C., see note 11 supra.

In the papers accompanying its motion for summary judgment, the United States asserted that Harper resided in New York County on October 3, 1972. Corwin, in an answering affidavit, suggested that Harper's residence on that date was unknown and asserted that it certainly was not in New York City. The United States then submitted an affidavit that backed off from the positive assertion of New York residence and stated that Harper may have resided in New York or in Oklahoma City but that it did not matter, since it was undisputed that the situs of the debt was in New York County.[13] On this paper record, Judge Lasker decided that Harper's residence on October 3, 1972 was incapable of determination. Nonetheless, he validated the IRS notice filed in New York

on the novel and questionable theory that the IRS could, and did, acquire priority by such filing because it had demonstrated "due diligence" and "substantial compliance" with the statutory requirements.

We believe that Judge Lasker acted prematurely. If Harper resided in New York County or Oklahoma City on October 3, 1972, the United States' tax lien would be entitled to priority over Corwin on the basis of the statute alone and the "due diligence" theory devised below would have been unnecessary. Cf. S. D'Antoni, Inc. v. Great Atlantic & Pacific Tea Co., 496 F.2d 1378, 1380 (5th Cir. 1974). On the other hand, if Harper resided in Switzerland on that date, Corwin would be entitled to priority over the United States.[14] Once again, there would be no need to consider a "due diligence" theory of filing. Harper's residence on October 3, 1972 was a material but undetermined question of fact and summary judgment should not have been granted. United States v. Webster Record Corp., *supra*, 208 F.Supp. at 415–16. Nor, until further proceedings were held and all the evidence submitted could the district court properly decide that the "taxpayer's actual residence cannot be determined." 375 F.Supp. at 191.[15] For this reason, we reverse and remand for further proceedings.

We are aware that determining where Harper resided on October 3, 1972 may prove difficult. As we have noted, Harper moved about quite a bit after he sold his Westchester home. And even if he can be located in one place on October 3, 1972, it is not obvious that the spot would be his residence. Residence, "when used in a sense other than domi-

---

**12.** Letter dated January 9, 1975. Appellants also object to consideration of this letter. See note 3 supra.

**13.** The stakeholder, Interpublic, was located in New York County. We do not, however, necessarily agree that the situs of the debt was in New York County. See text accompanying note 11 supra.

**14.** In addition, if Harper continued to reside in Switzerland until January 3, 1973, the Unit-

ed States, by virtue of its filing of notice in Washington, D.C., on that date, would be entitled to priority over Culbertson, whose judgment lien was not perfected until February 1973.

**15.** E. g., the district court did not have before it the supplemental information given to us by the Government, referred to in notes 3 & 12 supra, and accompanying text, although there was evidence of the Swiss address in the record.

cil, is one of the most nebulous terms in the legal dictionary." Reese & Green, That Elusive Word, "Residence," 6 Vand. L.Rev. 561, 580 (1953), and the confusion is not of recent origin. The Chinese Tax Cases, 14 F. 338, 344 (C.C.D.Or.1882). Residence can have many different meanings depending on the context in which it is used. Reese & Green, supra, at 563–64; McGrath v. Kristensen, 340 U.S. 162, 175, 71 S.Ct. 224, 95 L.Ed. 173 (1950); United States v. Rubinstein, 166 F.2d 249, 254 (2d Cir.), cert. denied, 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146 (1948); Restatement (Second) of Conflicts, § 11, comment k (1971).

A principal purpose of the 1966 Tax Lien Act in using residence filing was to "increase the likelihood that creditors, generally, will receive notice as to taxpayers' standing with the Government." 3 U.S.Code Cong. & Admin. News, supra, at p. 3731. In light of this purpose, the residence of a delinquent taxpayer is a question of fact to be determined by various criteria: Among them are the taxpayer's physical presence as an inhabitant and not a mere transient, Myers v. Commissioner, 180 F.2d 969, 971 (4th Cir. 1950); the permanence of that presence, In re Watson, 99 F.Supp. 49, 54 (W.D.Ark.1951); the reason for his presence; and the existence of other residences. In general, for this statute, where a taxpayer resides is where he dwells for a significant amount of time and where creditors would be most likely to look for him. What proportion of time is "significant" is not capable of exact definition and must be determined on a case by case basis, at all times keeping the purpose of the filing requirement in mind.

It may well be that after production of all available evidence at a trial, Harper's residence can be determined. Therefore, we do not decide the issue that Judge Lasker faced too soon: what to do if it is found that the taxpayer had no definable residence on October 3, 1972. As we noted above, the 1966 statute was designed to ease the burden for creditors in searching for federal tax liens and for the IRS in filing notices of such liens. Thus, the drafters chose residence instead of domicile as the key. But every person has at all times one and only one domicile for the same purpose, Restatement (Second) of Conflicts, supra, § 11; United States ex rel. Devenuto v. Curran, 299 F. 206, 209 (2d Cir. 1924), while a person can have more than one residence, Myers v. Commissioner, supra, 180 F.2d at 971; United States ex rel. Devenuto v. Curran, supra, 299 F. at 211; In re Watson, supra, 99 F.Supp. at 53, or perhaps none at all. Reese & Green, supra, at 564. Apparently, the drafters did not consider this last possibility. Thus, we might be confronted with a situation where the statutory language does not explicitly apply and the legislative history is silent.

Judge Lasker found that in such event the IRS could acquire priority by filing in New York because it had shown "due diligence" and "substantial compliance" with the statute. Corwin forcefully argues that this construction rewrites the statute, something only Congress can do. For now, we note that after remand it may be unnecessary for the district court to reconsider this theory. Another possibility, in the absence of a residence for Harper on the specific date, might be to "construe" residence as "the last known address of the taxpayer." Cf. 26 U.S.C. §§ 6212, 6303. This, too, would be statutory construction of large dimensions. In addition, this phrase has been interpreted to mean the last address known to the local IRS office, even after the taxpayer has moved and paid taxes to another IRS office. Luhring v. Glotzbach, 304 F.2d 556, 559 (4th Cir. 1962). A last known address interpretation might thus put creditors of the taxpayer at the mercy of whatever records the IRS office involved happened to possess. Finally, when a taxpayer has no definable residence, it may be impossible for the IRS to file under 26 U.S.C. § 6323 a notice of tax lien valid against judgment lien creditors and others there specified. Such a result may be unavoidable in light of the legislative history referred to above. This would not, however, "al-

low tax evasion by the mere disappearance of the taxpayer," as the court below stated. 375 F.Supp. at 191. As Corwin points out, the Government's contest here is not with a taxpayer on the run but with judgment creditors who also have a claim of right. If the other creditors had not appeared, the Government could have levied on the taxpayer's property and collected from him without ever filing a notice of tax lien anywhere. 26 U.S.C. § 6331; American Honda Motor Co. v. United States, 363 F.Supp. 988, 992 (S.D.N.Y.1973). And even if Corwin or another creditor ultimately prevails here, a substantial tax liability would still face Harper. Nonetheless, a holding that for a taxpayer without an ascertainable residence the Government can never properly file its notice of tax lien is unsatisfactory, and we hope that Congress will see fit to eliminate the possibility of such a result in the future.[16]

We reverse the grant of summary judgment by the district judge and remand for further proceedings in accordance with this opinion.

MANSFIELD, Circuit Judge (concurring):

I concur in the holding that summary judgment was improperly granted by the District court because of the existence of a question of material fact; that is, the location, if any, of the taxpayer's residence on October 3, 1972. However, I disagree with the majority's construction of 26 U.S.C. § 6323(f)(2)(B) and with the burden of proof that it would place upon the government upon remand.

In my view Congress did not intend the term "residence" in § 6323(f)(2)(B) to be given a strict or literal meaning that would prevent the government from filing a lien to establish its priority to collect a lawfully-due tax in the case where a taxpayer has discontinued his residence and hopped around the country. Cf. United States v. Ball, 326 F.2d 898, 900 (4th Cir. 1964). As Judge Learned Hand

said in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (concurring opinion) "[t]here is no surer way to misread any document than to read it literally." See also Federal Deposit Ins. Corp. v. Tremaine, 133 F.2d 827, 830 (2d Cir. 1943) (L. Hand, C. J.) ("There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.")

I believe that § 6323(f)(2)(B) should be construed to mean that, where the government cannot through reasonable inquiry ascertain a taxpayer's actual residence, it may satisfy the statute's requirement by filing notice of its judgment lien with the state-designated office within the jurisdiction of the taxpayer's last known or verifiable abode. This practical construction seems to me to be in accord with the purpose of the statute, which is to put other creditors on notice, since they too would be most likely to inquire about liens in the county of the last residence of the taxpayer that could be ascertained by reasonable effort. Furthermore, the interpretation of "residence" as meaning "last known residence" is in accord with other provisions of the Code, see, e. g., 26 U.S.C. §§ 6212 & 6303.

Under this construction of the statute there need be no fear that the government might be able to satisfy the statute's requirements merely by locating the taxpayer's last address shown on IRS tax records, since this would not necessarily be ascertainable by reasonable effort on the part of creditors. Nor is there any reason for adopting such an interpretation merely because it has been adopted by one court in construing a different statute. See Luhring v. Glotzback, 304 F.2d 556, 559 (4th Cir. 1962). The last publicly known address of a taxpayer, on the other hand, is ascertainable by creditors.

---

**16.** One obvious remedy is to allow filing in Washington, D.C., for a taxpayer with no identifiable residence, as is now done for a taxpayer living abroad. See note 11 supra.

The government should not be obligated under § 6323(f)(2)(B) to ferret out the secret hideout of such a taxpayer, whether it be in Switzerland or elsewhere. While a clarifying amendment of the statute would be helpful I do not think it is essential. Congress' purpose can be implemented by a practical construction of the term "residence" as used in the existing law.