### In re CAROUSEL INTERNATIONAL CORP., Debtor.

**Jeffrey C. TAYLOR, Trustee in Bankruptcy,**

v.

**QUANTUM CHEMICAL CORP. et al., Defendants.**

No. 97–2185.

United States District Court, C.D. Illinois.

Nov. 5, 1997.

David Stevens, Heller Holmes & Associates, P.C., Mattoon, IL, for.appellant.

Barbara E. Seaman, U.S. Dept. of Justice, Washington, DC, David H. Hoff, U.S. Atty., Urbana, IL, for appellee.

### ORDER ON APPEAL

·BAKER, Senior District Judge.

This appeal from a final order of the bankruptcy court turns on the question whether, within the meaning of 26 U.S.C. § 6323(f)(2)(B), the debtors were residents of Jupiter, Florida on March 23, 1992.

On June 24, 1992, B. Bryan Smith and Marilyn Smith filed for protection from their creditors under Chapter 11 of the Bankrupt-

cy Code. The Smiths' corporate holdings had suffered severe financial setbacks leaving the Smiths insolvent. The Smiths' creditors that are of interest in this appeal are Quantum Chemical Corp., a judgment creditor, and the Internal Revenue Service, with a federal tax lien for back taxes. Quantum obtained a judgment against the Smiths in the Illinois courts on February 24, 1992 in the amount of $172,128.42, and execution was issued on that judgment. The IRS filed a notice of federal tax lien with the Clerk of the Circuit Court in Palm Beach County, Florida on March 23, 1992. The IRS served a notice of levy on the Smiths' trustee in bankruptcy on March 29, 1993. The Fort Lauderdale office of the IRS issued a notice of levy on April 16, 1993 for taxes and penalties in the sum of $192,708.00.

Meanwhile the bankruptcy court proceeded with the administration of the Smiths' estate. Part of the Smiths' assets, their interest in Carousel International Corporation, was sold to Atlantis Group, Inc.. As part of the sale agreement, Atlantis insisted that the principals of Carousel execute non-competition agreements in consideration of payment to them of $250,000. The Smiths as principals of Carousel were entitled, the bankruptcy court ruled, to $114,000 of the proceeds from the non-competition agreement. Quantum and the IRS both claimed that they had preference in their claim on the $114,000. The bankruptcy judge rendered summary judgment that the IRS had a valid first lien on the $114,000 and Quantum appealed. The issue on review boils down to this: If the Smiths were residents of Florida on and prior to March 23, 1993, when the IRS filed its notice of levy in Palm Beach County Florida, then the IRS is entitled to preference. However, if the Smiths were residents of Illinois at the time Quantum obtained its judgment and execution, February 24, 1992, then Quantum is entitled to preference.

Quantum argues that a genuine issue of material fact existed in the case and the bankruptcy court should not have granted summary judgment to the IRS. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481 (7th Cir.1991). On review, the district court views "all evidence in the light most favorable to the party opposing summary judgment." *Wilson v. Williams,* 997 F.2d 348 (7th Cir.1993). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Quantum admitted in the pleadings it submitted in the bankruptcy court that there was but one unresolved issue of fact, *i.e.,* When did B. Bryan Smith's daughter, Zella, remarry and move to Washington? App. Brief, App. p. 74. That fact, Quantum argues, would show when Marilyn Smith took over the management of Marilyn's and Zella's joint venture flower shop in Illinois and, inferentially, that Marilyn was a resident of Illinois.

The uncontested facts show that in 1975 Bryan Smith suffered a heart attack and he then appointed Marilyn co-chairman of his business enterprises. The Smiths purchased condominiums in Florida in 1982 and 1984. In 1984 the Smiths registered to vote in Florida and have voted there ever since. In 1988 the Smiths purchased a residence for $800,000 in Jupiter, Florida and furnished it with $150,000 worth of furnishings. The Smiths kept their most valuable possessions and the things most important to them at the Jupiter residence. The Smiths had no bank accounts in Florida but paid for everything by credit cards that were invoiced to their

Illinois' businesses. In 1988 Bryan Smith also turned over 1/3 of his business assets to his wife and 1/3 to his son. The Smiths lived in Florida returning to Illinois only 2 or 3 days at a time for business reasons. They kept the Champaign, Illinois residence on Valley Brook Road as a place to stay when they were called back on business. The Champaign residence was also used by business visitors to the area at the discretion of the Smiths' son. The Jupiter Florida residence on the other hand was purely a family residence and was maintained year round with utilities, cable, telephone and yard and pool maintenance services and a twice weekly maid service. The Smiths claimed a Florida homestead exemption for the Jupiter residence. Bryan Smith had a Florida driver's license. Marilyn kept her Illinois license because she feared taking a driving test in Florida. The Smiths filed their federal income tax returns with the Internal Revenue Service Center, Atlanta, Georgia, showing the Jupiter Florida address as their residence. The mailing address on the Smiths' homeowners insurance policy was the Jupiter residence. The Smiths' business ties were in Illinois and they kept in touch by telephone and fax. It is uncontested that but for the financial setbacks and the need for them to come to Illinois to deal with those setbacks, the Smiths would have spent 100% of their time in Florida. The Smiths sold their Jupiter, Florida residence in April 1994 in a "distress sale situation."

26 U.S.C. § 6323 provides in pertinent part that:

(a) The lien imposed by section 6321 shall not be valid against any ... judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary. (f)(1) The notice referred to in subsection (a) shall be filed—In the case of personal property, ... in one office within the State ... in which the property subject to the lien is situated. (2) ... property shall be deemed to be situated—(B) In the case of personal property, whether tangible or intangible, at the *residence* of the taxpayer at the time the notice of the lien is filed. (emphasis added).

■ "When the drafters added section 6323(f)(2)(B), they deliberately avoided using

domicile ... and chose residence instead 'because of the difficulty in determining a person's domicile based as it is on (among other things) his state of mind." *Corwin Consultants, Inc. v. Interpublic Group of Companies,* 512 F.2d 605, 608 (2nd Cir.1975). "[T]he residence of a delinquent taxpayer is a question of fact to be determined by various criteria: Among them are the taxpayer's physical presence as an inhabitant and not a mere transient, ....; the permanence of that presence ...; the reason for his presence ...; and the existence of other residences." *Id* at 610.

■ Here the uncontested evidence is overwhelming that the Smiths were established residents in Jupiter, Florida on March 23, 1992. The unresolved date (apparently sometime in 1993) when Zella remarried and moved to the State of Washington could not negate or render irrelevant all the other facts showing the Smiths were Florida residents. Taken as a whole the record could not lead a rational trier of fact to find that the Smiths were Illinois residents at the time the IRS filed its lien. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment was appropriate and the order appealed from is affirmed