In re Jerald D. SAUNDERS, Debtor.

Jerald D. Saunders, Appellant/Cross–
Appellee,

v.

United States of America,
Appellee/Cross–
Appellant.

No. 96–6236CIV.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

Feb. 25, 1999.

Patrick S. Scott, Patrick S. Scott & Associates, Fort Lauderdale, FL, for debtor.

Robert J. Higgins, United States Department of Justice, Washington, DC, for appellee.

### FINAL ORDER AFFIRMING/RE-VERSING BANKRUPTCY COURT'S ORDER

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court, pursuant to 28 U.S.C. § 158(a), on cross-appeals by the debtor, Jerald D. Saunders, and the United States of America, of a Memorandum Decision and Order, dated January 26, 1996, entered by United States Bankruptcy Judge Raymond B. Ray (hereinafter "Bankruptcy Order").[1] The Court has carefully considered the cross-appeals, has carefully reviewed the court file herein including the entire designation of record on appeal, and is otherwise fully advised in the premises.

### I. BACKGROUND

This case arose from the Internal Revenue Service's ("IRS") attempt to collect unpaid federal tax liabilities of the debtor, a former pilot with Pan Am. The debtor owed federal income taxes for the 1978, 1979, 1983, 1984, 1985, 1986 and 1987 tax years. In April 1991, Pan Am reassigned the debtor from Germany back to the United States. On September 20, 1991, the IRS filed a notice of federal tax lien in Washington, D.C. with respect to the unpaid tax liabilities. The IRS filed the notice in Washington, D.C. because it believed that the debtor still resided outside of the United States.

In late 1991, Pan Am filed for bankruptcy relief. As a result, the debtor lost his job with Pan Am. As an employee of Pan Am, the debtor had an interest in two pension plans. During the course of Pan Am's bankruptcy proceedings, the debtor's interests in those pension plans were terminated. Consequently, in March 1993, the debtor rolled over his funds from the pension plans into individual retirement accounts (IRA) held at Smith Barney Shearson, Inc. ("Smith Barney"). The IRS was seeking to levy on the IRA accounts in order to satisfy the debtor's outstanding tax liabilities. On June 9 or 10, 1994, the IRS mailed a notice of levy to Smith Barney, which was received on June 14, 1994. At all times before the levy, the funds in the IRA accounts totaled more than the outstanding tax liabilities. Pursuant to the notice of levy, Smith Barney believed the funds were to be released to the IRS by July 6, 1994.

On July 6, 1994, prior to Smith Barney releasing the funds to the IRS, the debtor filed a bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in order to prevent the IRS from levying upon his IRA accounts with Smith Barney. On August 26, 1994, realizing that certain liabilities were not dischargeable in the bankruptcy proceeding, the debtor requested the bankruptcy court to dismiss the petition. On September 8, 1994, at a hearing on the debtor's motion to dismiss, the bankruptcy court read a ruling into the record at approximately 11:00 a.m. dismissing the bankruptcy proceeding. A

1. *Saunders v. United States (In re Saunders),* No. 94-23489-BKR-RBR, 1995 WL 865471

(Bankr.S.D.Fla. Jan. 26, 1996).

written order of dismissal followed, which was date-stamped by the Clerk's office at 2:01 p.m. and was docketed at 4:09 p.m. on the same day, September 8, 1994.

The IRS, after receiving the written order of dismissal, but prior to the docketing of the order, immediately filed a notice of federal tax lien in Broward County, Florida. The notice was date-stamped as filed at 2:32 p.m. on September 8, 1994.

On September 9, 1994, one day after the dismissal of his first bankruptcy proceeding, the debtor filed a second bankruptcy petition under Chapter 7 of the Bankruptcy Code. This second bankruptcy proceeding is currently before the Court. On September 9, 1994, the date of the present bankruptcy petition, the debtor owed the IRS over $500,000 as follows:

| Tax Year | Tax | Interest | Penalty |
|---|---|---|---|
| 1978 | $ 5,167.80 | $112,839.51 | $ 11,046.84 |
| 1979 | 6,616.64 | 24,689.14 | 1,995.16 |
| 1983 | 14,122.36 | 42,422.62 | 21,627.50 |
| 1984 | 14,427.00 | 39,769.82 | 22,213.84 |
| 1985 | 19,038.00 | 44,801.70 | 27,319.26 |
| 1986 | 19,349.00 | 24,166.31 | 9,190.78 |
| 1987 | 14,296.00 | 21,590.90 | 17,076.40 |
| Totals | $93,016.80 | $310,280.00 | $110,469.78 |

The debtor's IRA accounts with Smith Barney have been determined to be exempt from the debtor's bankruptcy estate pursuant to Florida Statutes §§ 222.21(2)(a) and 222.201.

On April 12, 1995, the debtor filed an adversary complaint to avoid liens and determine dischargeability of income taxes, which is the subject of the present cross-appeals. The adversary complaint sought to avoid the notices of federal tax liens recorded on September 20, 1991 in Washington, DC and on September 8, 1994 in Broward County, Florida. The adversary complaint also sought to have the debtor's 1978, 1979, 1983, 1984, 1985 and 1987 tax liabilities discharged.[2]

On September 22, 1995, a trial was held on the debtor's adversary complaint. Following the trial, the bankruptcy court entered its Memorandum Decision and Order, which is the current order on appeal. The bankruptcy court specifically held as follows: (1) the September 8, 1994 recording of a notice of federal tax lien violated the automatic stay provisions of 11 U.S.C. § 362, and is therefore avoided, because the IRS recorded the notice prior to the actual docketing of the written order of dismissal; (2) the September 20, 1991 notice of federal tax lien recorded in Washington, DC was ineffective, and therefore avoided, because the debtor was a resident of Florida; (3) the 1978, 1979 and 1987 taxes and interest are dischargeable but the 1983, 1984, 1985 and 1986 taxes and interest are not dischargeable; and (4) the penalties for all of the tax years at issue are dischargeable. The debtor appealed and the United States has cross-appealed.

Specifically, the debtor appeals the bankruptcy court's determination that the 1983, 1984 and 1985 taxes and interest are not dischargeable. The debtor asserts that the bankruptcy court should not have tolled the time periods for dischargeability for the time period during the debtor's first bankruptcy proceeding.

The United States appeals the bankruptcy court's determination that the debtor was a resident of Florida on September 20, 1991. The United States also appeals the bankruptcy court's determination that the recording of the September 8, 1994 notice of federal tax lien violated the automatic stay. Finally, the United States requests the Court to remand the matter to the bankruptcy court to determine the rights of the parties to the funds held in the IRA accounts with Smith Barney which are subject to the notice of levy.

The Court will address each of the issues on appeal in turn.

---

**2.** The debtor has conceded from the beginning of the proceeding that the 1986 taxes and interest are dischargeable. The United States has not challenged the 1978, 1979, and

1987 tax liabilities, and the bankruptcy court discharged these liabilities in the Bankruptcy Order.

## II. STANDARD OF REVIEW

■ The Bankruptcy Court's findings of fact will not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013; *Green Tree Acceptance, Inc. v. Calvert (In re Calvert )*, 907 F.2d 1069, 1071 (11th Cir. 1990). Equitable determinations by the bankruptcy court are reviewed for abuse of discretion, *In re Red Carpet Corp.*, 902 F.2d 883 (11th Cir.1990), while conclusions of law are reviewed by the District Court *de novo. In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re Sublett*, 895 F.2d 1381 (11th Cir.1990).

## III. DISCUSSION

### A. *Tolling of Time Periods for Prior Bankruptcy Filing*

■ Pursuant to section 523(a)(1)(A) and 507(a)(8)(A)(ii) of the Bankruptcy Code, income tax liabilities which were assessed within 240 days, plus any time plus 30 days during which an offer in compromise was pending, of the date of the filing of the petition, are excepted from discharge. Here, the debtor's 1983, 1984 and 1985 taxes were assessed within such time period prior to the initial July 6, 1994 bankruptcy petition, and thus, were excepted from discharge.[3] Consequently, the debtor requested the bankruptcy court to dismiss the original bankruptcy proceeding to allow the debtor to file a new bankruptcy petition.

The debtor filed a new bankruptcy petition on September 9, 1994, which was filed more than 240 days (plus the additional time within which the debtor had an offer of compromise pending before the IRS plus 30 days) after the debtor's 1983, 1984 and 1985 taxes were assessed. Therefore, if the debtor had not filed the original bankruptcy proceeding, the debtor's 1983, 1984 and 1985 tax liabilities would have

been dischargeable in the present bankruptcy proceeding.[4] The question before the Court, however, is whether the time period for determining the dischargeability of tax liabilities was tolled during the pendency of the prior bankruptcy proceeding.

The Court notes that there is a split among the courts as to whether such time periods are tolled. *Compare Waugh v. Internal Revenue Serv. (In re Waugh)*, 109 F.3d 489 (8th Cir.1997), *cert. denied*, 522 U.S. 823, 118 S.Ct. 80, 139 L.Ed.2d 38 (1997) (finding the time periods are suspended while the debtor was in bankruptcy) *with Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993) (finding that the time periods are not suspended). The majority of cases, relying upon 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b), hold that the time periods are suspended during the pendency of the debtor's prior bankruptcy proceedings and for an additional six months thereafter. *See Simmons v. United States*, 227 B.R. 338, 340 (Bankr.N.D.Ga.1998) (listing cases). The Eleventh Circuit has not yet reached the present issue. For the reasons that follow, the Court will follow the majority of cases to decide the present issue.

While the Bankruptcy Code does not contain any provisions which explicitly suspend the dischargeability time periods while a debtor is engaged in bankruptcy proceedings, 11 U.S.C. § 108(c) provides as follows:

> Except as provided in section 524 of this title, *if applicable nonbankruptcy law*, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected un-

---

3. The parties do not dispute the dates that the IRS assessed the taxes or the time period during which the debtor had an offer in compromise pending.

4. However, if the debtor had not filed the original bankruptcy petition, the IRS would have had ample opportunity to levy upon the debtor's IRA accounts with Smith Barney to satisfy the entire outstanding tax liabilities.

der section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c) (emphasis added). The United States' argument is that Section 108(c) incorporates 26 U.S.C. § 6503(h), which provides as follows:

(h) *Cases under title 11 of the United States Code.—The running of the period of limitations* provided in section 6501 or 6502 on the making of assessments or collection *shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting* and—

(1) for assessment, 60 days thereafter, and

(2) *for collection, 6 months thereafter.*

(Emphasis added). In *Waugh,* the court addressed these two provisions and noted as follows:

Waugh urges this Court to determine that because section 108(c) applies only to "nonbankruptcy law," the statute does not act to suspend the priority period of section 507(a)(8)(A)(i), which is itself part of the Bankruptcy Code. We recognize that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)(alteration in original)(quoting

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *accord Missouri v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.),* 64 F.3d 1146, 1150 (8th Cir. 1995). However, we conclude that this is such a "rare case." If we applied the plain meaning of section 108(c) and held that the priority period of section 507(a)(8)(A)(i) is not suspended during bankruptcy proceedings, Congress's intent to afford the IRS a three-year priority period for the collection of taxes certainly would be frustrated. Therefore, we conclude that the three-year priority period of section 507(a)(8)(A)(i) is suspended by 11 U.S.C. § 108(c) and 26 U.S.C. § 6503(b) and (h), for the time that the automatic stay prevents the IRS from collecting outstanding tax debts.

*Waugh,* 109 F.3d at 492–493. In support of its decision, the court cited to the legislative history of section 108(c), which supports the position that Congress intended section 108(c) to incorporate section 6503(h) into the Bankruptcy Code:

In the case of Federal tax liabilities, the Internal Revenue Code suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for 6 months thereafter (§ 6503(b) of the Code). The amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of a nondischargeable Federal tax liability of a debtor will resume running after 6 months following the end of the period during which the debtor's assets are in the control or custody of the bankruptcy court. *This rule will provide the Internal Revenue Service adequate time to collect nondischargeable taxes following the end of the title 11 proceedings.*

*Id.* at 493 (quoting S.Rep. No. 95–989, at 31 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5816–17).

The court finds *Waugh,* and the other cases following the majority position, to be persuasive and will therefore follow the majority position. The Court notes that the present case would be the precise case that Congress was concerned about when it intended for the IRS to have adequate time to collect nondischargeable taxes following the end of a bankruptcy proceeding. Here, the original bankruptcy was dismissed on September 8, 1994 and the second bankruptcy was filed the next day on September 9, 1994. Clearly, the IRS did not have ample opportunity to collect the outstanding tax liabilities between the two bankruptcy proceedings, and the IRS' efforts to collect the debtor's liabilities were certainly frustrated by the debtor's successive bankruptcy filings. Accordingly, the Court affirms the bankruptcy court's holding that the debtor's 1983, 1984 and 1985 taxes and interest are excepted from discharge.[5]

### B. *The September 20, 1991 notice was not effective*

Pursuant to 26 U.S.C. § 6323(f)(2)(B), the proper place for filing a notice of federal tax lien, "[i]n the case of personal property, whether tangible or intangible, [is] at the *residence* of the taxpayer at the time the notice of lien is filed and the residence of a taxpayer whose residence is without the United States shall be deemed to be in the District of Columbia." In the present case, the bankruptcy court found that the debtor's residence at the time of the filing of the September 20, 1991 notice was Florida. Therefore, the bankruptcy court found that the notice was invalid. The United States argues that the notice was correctly filed in Washington, D.C. The Court disagrees.

"Section 6323(f)(2)(B) . . . was added by the Federal Tax Lien Act of 1966 (Pub. L.No.89–719) to clarify 'existing law by providing specific rules with respect to the place of filing a notice of a Federal tax

lien . . . .' " *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.,* 512 F.2d 605, 608 (2d Cir.1975) (quoting 3 U.S.Code Cong. & Admin.News, 89th Cong., 2d Sess.1966, at p. 3732 (S.Rep.No. 1708)). "When the drafters added section 6323(f)(2)(B), they deliberately avoided using domicile, however, and chose residence instead 'because of the difficulty in determining a person's domicile, based as it is on (among other things) his state of mind.' " *Id.* (quoting 3 U.S.Code Cong. & Admin.News, supra, at p. 3732). A principal purpose of the 1966 Tax Lien Act in using "residence" filing was to "increase the likelihood that creditors, generally, will receive notice as to taxpayers' standing with the Government." *Id.* at 610 (quoting 3 U.S.Code Cong. & Admin.News, 89th Cong., 2d Sess.1966, at 3731); *see also Urban Industries, Inc. of Kentucky v. Thevis,* 670 F.2d 981 (11th Cir.1982). A person can have more than one residence but only one domicile. *Urban Industries,* 670 F.2d at 986 (citing *Corwin,* 512 F.2d at 610).

The residence of a delinquent taxpayer is a question of fact to be determined by various criteria, including: the taxpayer's physical presence as an inhabitant and not a mere transient; the permanence of that presence; the reason for his presence; and the existence of other residences. *Corwin,* 512 F.2d at 610; *see also In re Carousel International Corp.,* 219 B.R. 807, 809 (C.D.Ill.1997). In general, for this statute, where a taxpayer resides is where he dwells for a significant amount of time and where creditors would be most likely to look for him. *Corwin,* 512 F.2d at 610.

In the present case, the bankruptcy court found that the debtor was a Florida resident on September 20, 1991. In particular, the bankruptcy court found as follows:

---

**5.** Because of the Court's holding that the time periods were suspended by section 108(c) and 6503(h), the Court does not need to reach the bankruptcy court's basis, under 11 U.S.C. § 105(c), for holding the 1983, 1984 and 1985 taxes and interest are nondischargeable.

Upon review of the evidence, I find that the Debtor has been a resident of Florida since he was reassigned to Miami by Pan Am in April 1991. At that time, he was registered in a training course and filed a W–4 with his employer listing his Florida address. The Debtor has spent a great majority of his time traveling with Pan Am and "living out of a suitcase," but in 1991 the Debtor spent more than 100 days in Florida. . . . The IRS has not produced any evidence that the Debtor claimed any residency other than Florida after April 1991, or that Mr. Saunders spent more time anywhere other than Florida.

Bankruptcy Order at 4. The Court holds that the bankruptcy court's finding that the debtor was a Florida resident on September 20, 1991 was not clearly erroneous.[6]

■ Having concluded that the debtor was a Florida resident on September 20, 1991, the next question presented is whether the IRS can still file the notice in Washington, D.C. if the only means available to the IRS indicates that the debtor still resided outside the United States. More specifically, the question is whether the debtor was required to notify the IRS that he had changed his residence to Florida. The Court finds that the Internal Revenue Code does not provide for such a requirement

The cases relied upon by the United States all involve instances where the IRS mailed notices of deficiencies of taxes to taxpayers under 26 U.S.C. § 6212. Section 6212 requires that a notice of deficiency be mailed to the taxpayer's "last known address." Implicit in this requirement is

that the taxpayer must notify the IRS of any new address or the IRS is permitted to mail a notice of deficiency to the taxpayer's last known address, even if the taxpayer no longer lives there. *See, e.g., Gaw v. Commissioner,* 45 F.3d 461 (D.C.Cir. 1995). Unlike section 6212, however, section 6523(f)(2)(B) does not provide that the IRS may file a notice of federal tax lien in the taxpayer's "[last known] residence." The Court declines to read such additional language into the statute. *But see Corwin,* 512 F.2d at 611 (concurring opinion) ("[T]he interpretation of "residence" as meaning "last known residence" is in accord with other provisions of the Code, see, e.g., 26 U.S.C. §§ 6212 & 6303."). Rather, the notice of federal tax lien must be filed in the taxpayer's residence.

Here, the debtor's residence on September 20, 1991 was in Florida. While the Court is sympathetic to the United States' argument that it would have been difficult to ascertain the debtor's residence in September 1991, it would have been just as difficult for creditors, especially creditors in Florida, to have located a notice of federal tax lien filed in Washington, D.C. Therefore, the Court affirms the bankruptcy court's holding that the September 20, 1991 notice of federal tax lien filed in Washington, D.C. was not valid.

### C. *The September 8, 1994 notice was valid and not avoidable*

■ The next question presented is whether the automatic stay from the debtor's prior bankruptcy was lifted prior to 2:32 p.m., on September 8, 1994, when the IRS filed its notice of federal tax lien in Broward County. Florida. 11 U.S.C. § 362(c)(2) provides that the automatic

---

**6.** The United States argues that the evidence was not sufficient to establish that the debtor was a residence of Florida. It is clear, however, that the debtor was no longer a resident of Germany, even if the IRS was unaware of this fact. Moreover, if the debtor was not a resident of Florida, then the only other alternative residence would have been New York. However, the IRS also did not file a notice of federal tax lien in New York. Finally, the

Court agrees with the United States' argument that events occurring after September 20, 1991 are not relevant for determining the debtor's residence on September 20, 1991. However, ignoring these additional events, the Court holds that the bankruptcy court's finding that the debtor was a Florida resident . on September 20, 1991 was not clearly erroneous.

stay was in effect until the prior bankruptcy case was "dismissed." Therefore, the Court must decide when the prior bankruptcy case was actually "dismissed" for purposes of dissolving the automatic stay.

The United States argues that the notice of federal tax lien did not violate the automatic stay if the bankruptcy case was dismissed by the bankruptcy court when the court gave its ruling from the bench, or when the bankruptcy court signed its order dismissing the action, or when the written order was stamped by the clerk of the court. The debtor argues that the case was not dismissed until the clerk officially docketed the written order at 4:09 p.m. on the computer system, and therefore, the recording of the notice of federal tax lien at 2:32 p.m. violated the automatic stay.

After considering the arguments of the parties, the bankruptcy court held that the notice of federal tax lien filed on September 8, 1994 violated the automatic stay provisions of section 362 as follows:

Federal Rule of Bankruptcy Procedure 9021 provides that "[a] judgment is effective when entered as provided in Rule 5003." Rule 5003 requires the Clerk to enter on the official docket "each judgment, order, and activity in that case." The term "judgment" as used in this rule means "any appealable order". F.R.B.P. 9001(7). Therefore, any appealable order becomes effective once entered on the Court's official docket.

The Dismissal Order is an appealable final order. Consequently, following the plain meaning of the above rules, the notice of federal tax lien, which was filed prior to the actual docketing of the Dismissal Orders, was filed when the automatic stay was still in effect. *See, In re Weston,* 101 B.R. 202 (Bankr.E.D.Cal. 1989) (automatic stay terminated when dismissal order entered on docket), *aff'd,* 123 B.R. 466 (9th Cir. BAP 1991). *See also, In re Beatty,* 162 B.R. 853 (9th Cir. BAP 1994) (effective and operative date

of order is date of entry into docket); *In re Rebeor,* 89 B.R. 314 (Bankr.N.D.N.Y. 1988) (oral ruling converting case was not effective until entered on docket by clerk).

Bankruptcy Order at 6.

Initially, the Court has reviewed the cases cited by the bankruptcy court and notes that none of these cases squarely addressed the subject issue in the present action. At best, the cited passages in these cases are merely dicta. However, for every case that states that an order must be officially docketed to be effective, the Court has also found a separate case indicating that a dismissal is effective when dismissed on the record or when the order was entered. *See, e.g., In re Lashley,* 825 F.2d 362, 363 (11th Cir.1987) (per curiam) ("On September 22, 1986, the bankruptcy court entered an order dismissing the case. The bankruptcy court also specifically dissolved and vacated the § 362(a) automatic stay."); *see also Fish Market Nominee Corp. v. Pelofsky,* 72 F.3d 4, 6 (1st Cir.1995) ("But the stay under section 362(a) itself expired as soon as the judgment dismissing the chapter 11 case was entered, § 11 U.S.C. 362(c)"); *In re De Jesus Saez,* 721 F.2d 848, 851 (1st Cir.1983) ("We begin by noting that, unless extended by Rule 762 or in some other manner, an automatic stay must plainly terminate upon dismissal of the petition giving rise to it."). However, these additional cases also did not squarely address the subject issue in the present action. As far as the court can ascertain, the present issue is an issue of first impression.

More importantly, a review of the applicable rules also does not support the bankruptcy court's holding. Rule 5003 provides in pertinent part as follows:

(a) Bankruptcy dockets

The clerk shall keep a docket in each case under the Code and shall enter thereon each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of

the United States Courts. The entry of a judgment or order in a docket shall show the date the entry is made.

The Court notes that Rule 5003 is unclear as to which "entry" is required to be shown on the docket. Docket sheets routinely reflect both the date the order was actually entered by the Judge and the date the order was docketed. Of course the effective date listed on the docket sheet is always the actual date of the Order (or the date a pleading was actually filed) and not the actual date of docketing, which many times occurs a day or several days later.

Regardless of which entry is referenced, however, it does not necessarily follow from these rules that it is the task of docketing the order that makes the order effective. Rather, common sense dictates that a court's order is effective when a court enters such an order. If a court orders a case dismissed, then the case is dismissed. To hold otherwise would permit the clerk's office to misplace an order and prevent the judge's order from becoming effective. Parties should be able to reasonably rely on a written order, signed by a Judge, that the party has actually received, even if this Order does not get docketed. This is exactly what occurred here. The IRS physically had in its revenue officer's hands, a signed order from the bankruptcy court with a date stamp of 2:01 p.m., September 8, 1994. Relying upon this signed order, which caused the automatic stay to no longer be in effect, the IRS immediately filed a notice of federal tax lien. The Court holds that the filing of this notice of federal of tax lien did not violate the automatic stay.

Therefore, the Court holds that the prior bankruptcy case was dismissed when the bankruptcy court entered its order dismissing the case.[7] This dismissal occurred prior to 2:32 p.m. on September 8, 1994, and consequently, the automatic stay was no longer in effect when the IRS filed its notice of federal tax lien. Accordingly, the Court reverses the bankruptcy court's holding that the September 8, 1994 notice of federal tax lien violated the automatic stay.

### D. Determination of the Rights of the Parties

The United States argues that the bankruptcy court failed to address the rights of the parties with respect to the IRA accounts at Smith Barney. The debtor agrees that the Bankruptcy Order does not address this issue; however, the debtor argues that the issue was not preserved in the pretrial order and the issue was not raised by the United States in its pleadings. Because the bankruptcy court has not addressed the issue, including whether the issue was even preserved for the bankruptcy court to address, and in light of the court's prior rulings which clearly affect the parties rights to the IRA accounts with Smith Barney, the Court will remand the matter to the bankruptcy court to address.

### IV. CONCLUSION

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Bankruptcy Court's Memorandum Decision and Order, dated January 26, 1996, is hereby **AFFIRMED** in part and **REVERSED** in part as follows:

   A. The bankruptcy court's holding that the debtor's 1983, 1984 and 1985 taxes and interest are excepted from discharge is hereby **AFFIRMED**;

---

7. The Court does not need to reach the question whether the bankruptcy court's oral dismissal operated to cease the automatic stay, because a written order was also entered and date-stamped prior to the IRS' filing of the subject notice of federal tax lien. *Compare In re Tim Wargo & Sons, Inc.,* 107 B.R. 622, 625 (Bankr.E.D.Ark.1989) and *In re Rebeor,* 89 B.R. 314, 320 (Bankr.N.D.N.Y.1988), which found that a court's oral ruling is not operative if it is a final order, *with In re Nail,* 195 B.R. 922 (Bankr.N.D.Ala.1996), which disagreed with the prior cases.

B. The bankruptcy court's holding that the September 20, 1991 notice of federal tax lien filed in Washington, D.C. was not valid is hereby **AFFIRMED**;

C. The bankruptcy court's holding that the September 8, 1994 notice of federal tax lien violated the automatic stay is hereby **REVERSED**; and

2. This case is **REMANDED** to the Bankruptcy Court to enter whatever orders are necessary consistent with the above rulings, including addressing the rights of the parties with respect to the IRA accounts at Smith Barney;

3. The Clerk of this Court is directed to deny all pending motions as moot; and

4. This case is closed.